Argued and submitted October 13, 2015, affirmed August 30, 2017

JOHN HYLAND CONST., INC.,
an Oregon corporation,
*Plaintiff-Appellant,*

*v.*

WILLIAMSEN & BLEID, INC.,
an Oregon corporation,
*Defendant-Respondent.*

Lane County Circuit Court
161304401; A157122

402 P3d 719

Wm. Randolph Turnbow argued the cause and filed the briefs for appellant.

George W. Kelly argued the cause and filed the brief for respondent.

Before Tookey, Presiding Judge, and Hadlock, Chief Judge, and Aoyagi, Judge.*

---

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore; Aoyagi, J., *vice* Sercombe, S. J.

## HADLOCK, C. J.

This case involves a dispute between a general contractor (plaintiff) and a subcontractor (defendant) on a construction project for Lane Community College (LCC). Plaintiff filed an action claiming that defendant breached the contract between the parties (the subcontract) by not performing or completing certain specified work in accordance with the subcontract's requirements. In response, defendant counterclaimed that plaintiff breached the subcontract by failing to pay defendant the amounts due and owing under it and by acting in bad faith. After a bench trial, the trial court found in defendant's favor on both the claim and counterclaim for breach of contract and entered a judgment awarding defendant $51,786 in damages on its counterclaim. On appeal, plaintiff purports to raise four assignments of error; however, as explained below, plaintiff does not identify a ruling of the trial court that it seeks to have reversed, nor does plaintiff's briefing demonstrate that the legal theories underlying those assignments were ever cohesively presented to the trial court for decision, as required by the Oregon Rules of Appellate Procedure. Because of those deficits, we do not consider plaintiff's arguments. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 384, 823 P2d 956 (1991) (a plaintiff's failure to either preserve or properly raise an argument on appeal "normally will preclude its consideration on appeal"). Accordingly, we affirm.

For background purposes, we briefly describe the facts leading up to this appeal. LCC selected plaintiff to be the general contractor for a construction project that involved a major renovation of two buildings and the construction of an outdoor space (the Building 10/11/Breezeway Renovation). The contract between LCC and plaintiff was a standard AIA[1] form contract that provided, among other things, that LCC's architect had the authority to "reject Work that does not conform to the Contract Documents," and to "interpret and decide matters concerning performance under, and requirements of, the Contract Documents."[2]

---

[1] AIA refers to "American Institute of Architects."

[2] The architect's interpretations and decisions were required to be "consistent with the intent of, and reasonably inferable from, the Contract documents,"

Plaintiff, in turn, contracted with defendant, a "paintings and coatings specialty subcontractor," to do the painting and coating work on the LCC project. That subcontract included a requirement that "[defendant] assume[] toward [plaintiff] all obligations and responsibilities that [plaintiff] assumes toward [LCC] under the Contract Documents, to the extent those obligations and responsibilities apply to the Work." It also provided that plaintiff was not obligated to make final payment to defendant until (1) the work was "fully performed" according to the subcontract and accepted by plaintiff and LCC; (2) defendant was not in "default" under the subcontract, and (3) plaintiff has received full payment from LCC with respect to the work.

Defendant began its work in May of 2011, and it progressed smoothly for several months. At some point during late summer and early fall, however, the architect circulated several "punch lists," identifying work that needed to be corrected or completed before the architect would certify that the project was complete and LCC would make final payment to plaintiff. Defendant performed work on the punch-list items, but plaintiff and defendant disagreed about whether all of it was completed, in a satisfactory manner, and whether some items were within the scope of the subcontract. In addition, around that time, it was also discovered that defendant had not yet applied the intumescent coating that the subcontract required.[3] Defendant began that application in December, during the school's holiday break, but plaintiff and the architect became concerned that the coating was being applied outside of the manufacturer's recommended range of temperature, and defendant did not complete it.[4] Plaintiff eventually completed the work using its own employees and a substitute painting subcontractor.

and the architect's decisions "on matters relating to aesthetic effect" were to be final "if consistent with the intent expressed in" those documents.

[3] The subcontract specifications required defendant to apply intumescent coating—a fire retardant—on exterior exposed steel columns and beams, sufficient to provide two hours of fire protection. The trial court found that both parties had apparently forgotten about that aspect of the project until November.

[4] The parties dispute the circumstances of defendant's failure to complete the intumescent coating: plaintiff contends that defendant "abandoned the [p]roject"; defendant asserts that plaintiff "shut the project down" and "ordered" defendant off the job site.

Plaintiff subsequently brought this action against defendant, alleging that defendant had breached the subcontract "by failing to perform all of [the] work in accordance with the requirements of the subcontract" in several particulars, including, as narrowed on appeal, by refusing to remove overspray from certain surfaces, failing to paint certain ducts and conduits, failing to properly prepare and seal masonry surfaces, and failing to properly prepare and apply intumescent coatings and "refusing to complete" that work. As a result, plaintiff alleged, it was entitled to damages of $57,365.74 for the cost of repairing and completing defendant's work, less "application of all appropriate credits."

In response, defendant counterclaimed for breach of contract against plaintiff, alleging that plaintiff breached the parties' subcontract by failing to pay progress payments owed to defendant when they were due, failing to pay the total amount due under the subcontract and change orders, and acting in bad faith.[5] Defendant sought $51,655 in damages for that counterclaim.

The parties waived jury and tried their case to the court, telling the court that it was "a punch list case." After five days of trial, which included a visit to the work site, the court ruled in defendant's favor on both the claim and counterclaim. Announcing its decision from the bench, the court first concluded that plaintiff had failed to prove that defendant breached the subcontract in any of the particulars alleged by plaintiff. The court stated that it was relying on its assessment of the credibility of the parties' respective witnesses; the court explained that it found plaintiff's witnesses to be generally not credible and, on the other hand, that it believed defendant's witnesses' testimony regarding the work that defendant had done. Thus, the court apparently considered the dispute to depend on resolution of a

---

[5] Defendant also asserted several affirmative defenses and pleaded additional counterclaims for unjust enrichment, *quantum meruit*, "Open Account—Extra Work," "Open Account—Entire Project," and attorney fees. With the exception of defendant's counterclaim for attorney fees, and its "offset" defense to plaintiff's breach of contract claim, the court rejected those additional counterclaims and defenses on plaintiff's motions for directed verdict, made at the close of defendant's case-in-chief. The court denied plaintiff's motion for directed verdict on defendant's counterclaim for breach of contract.

factual matter—specifically, did defendant fail to complete the work of the subcontract in the manner alleged by plaintiff's complaint? The court's answer to that question apparently turned, at least in part, on a finding that the evidence that defendant put on about its performance under the contract was more credible than the evidence that plaintiff put on about defendant's lack of performance. The court also concluded that plaintiff had not proved damages.

Next, the court concluded that defendant had proved its counterclaim for breach of the subcontract by plaintiff, finding that "plaintiff did in fact fail to pay payments that were due and owing to the defendant for work covered by the contract itself." It declined, however, to find that defendant was entitled to payment for "extra work"—that is work outside the scope of the contract—that defendant had also claimed.

The court subsequently entered judgment in defendant's favor on plaintiff's claim for breach of contract and on defendant's counterclaim for breach of contract, and it awarded defendant damages of $51,786 on its counterclaim. Plaintiff appeals that judgment.[6]

Before turning to plaintiff's specific arguments, we review the prerequisites for obtaining appellate review of an asserted trial-court error. We do so because, as explained below, those prerequisites have not been met in this case. Moreover—and most importantly—the deficiencies (in preserving claims of error and in identifying purportedly erroneous rulings on appeal) are such that no issue is properly before us for resolution on the merits.

For a party appealing a trial court's judgment, the first challenge—and requirement—is to "identify" in each assignment of error "precisely the legal, procedural, factual, or other ruling that is being challenged." ORAP 5.45(3). In

---

[6] In its opening brief, plaintiff indicated that it also intended to appeal from a supplemental judgment awarding defendant attorney fees, but, at the time that plaintiff filed its brief, that judgment had not been entered. According to the trial court register, the court issued an order awarding defendant attorney fees of $40,198 and instructing defense counsel to prepare a supplemental judgment to that effect; however, the register does not reflect that any such judgment was ever submitted or entered.

addition to identifying a specific ruling that is challenged, each assignment of error must "specify the stage in the proceedings when the question or issue presented by the assignment of error was raised in the lower court, the method or manner of raising it, and the way in which it was resolved or passed on by the lower court," ORAP 5.45(4)(a)(i), and set out pertinent quotations of the record where the issue was raised and the ruling was made, ORAP 5.45(4)(a)(ii).

That requirement—that the appellant precisely identify the ruling that is being challenged—is not a mere matter of form, or simply a hoop to be jumped through on the way to briefing the merits of an appeal. In our system of justice, the purpose of an appeal is not to give the appellant an opportunity to pursue a new theory that it did not rely on below. Rather, "the function of appellate review" is "to correct errors of the trial court." *Falk v. Amsberry*, 290 Or 839, 843, 626 P2d 362 (1981). The appellant must identify a specific ruling before we are able to determine whether that ruling was erroneous and requires correction. *See Faverty v. McDonald's Restaurants*, 133 Or App 514, 527-28, 892 P2d 703 (1995), *rev dismissed*, 326 Or 530 (1998) ("Our function is to determine whether the trial court made an error of law about issues actually raised below and properly assigned as error on appeal.").

Thus, the appellant's proper assignment of error enables this court to determine, among other things, the precise nature of the trial court's ruling and the basis for it, the standard of review that we apply when reviewing that kind of ruling, and (as discussed below) whether the arguments that form the basis for the appellant's challenge to that ruling were adequately preserved. *See Migis v. AutoZone, Inc.*, 282 Or App 774, 805, 387 P3d 381 (2016), *adh'd to in part on recons*, 286 Or App 357, 396 P3d 309 (2017) ("Compliance with ORAP 5.45 is not a matter of mere form; it is crucial to our ability to review trial court rulings for error and to determine whether the appellant's claims of error were preserved below." (Internal quotation marks omitted.)); *Hayes Oyster Co. v. Dulcich*, 170 Or App 219, 224, 12 P3d 507 (2000) ("[T]he information the rules require enables the court and the opposing party to identify the specific ruling the appellant assigns as error, determine whether an

objection was properly preserved, and understand the basis for the trial court's ruling."). Moreover, proper assignment of error (or the appellant's inability to meet that requirement) may reveal that the appellant failed to secure a ruling on an issue presented for decision on appeal, indicating that the trial court never had the opportunity to consider it. *See Falk*, 290 Or at 843 ("[N]o error has occurred where no ruling has been made by the court or requested by the litigant[.]").

Once the appellant has identified the specific ruling that it challenges, and has explained the basis for the challenge on appeal, the appellant then must demonstrate that the claim of error was adequately preserved in the trial court. The general rule of preservation is familiar: "[B]efore an appellate court may address whether a trial court committed an error in any of the particulars of the trial of a case, the adversely affected party must have preserved the alleged error in the trial court and raised the issue on appeal by an assignment of error in its opening brief."[7] *Ailes*, 312 Or at 380; *see* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule[.]"). To demonstrate preservation, the appellant must show that the argument it makes on appeal is one that was presented to the trial court, giving that court "the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal." *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008).

Thus, the requirement that an appellant have preserved the claim of error that it presents on appeal is a fundamental principle of appellate jurisprudence, serving the important policy goals of fairness to the parties and the efficient administration of justice. As the Supreme Court

---

[7] As an exception to that general rule, the appellate court also has discretion to review an error that is "plain." ORAP 5.45(1). To be "plain," the error must (1) be an error of law; (2) be apparent, meaning the legal point is not reasonably in dispute; and (3) appear on the record, meaning the court need not go outside the record or choose between competing inferences to identify it. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). Plaintiff makes no argument that that exception to the preservation requirement is applicable in this case.

explained in *Peeples*, in addition to ensuring that the lower court had an opportunity to avoid the claimed error, the preservation requirement also ensures that the opposing party had a fair opportunity in the trial court "to respond to a contention"; the requirement is meant to prevent "taking the opposing party by surprise." *Id.* And, importantly, the preservation requirement "fosters full development of the record, which aids the trial court in making a decision and the appellate court in reviewing it." *Id.* at 219-20. Thus, the reason for the rule is "not merely to promote form over substance but to promote an efficient administration of justice and the saving of judicial time." *Shields v. Campbell*, 277 Or 71, 77-78, 559 P2d 1275 (1977).

Lack of compliance with ORAP 5.45 may render a claim of error unreviewable on appeal. ORAP 5.45(4)(a) (providing that we may decline to review an assignment of error that requires us "to search the record to find the error or to determine if the error properly was raised and preserved"); *see Migis*, 282 Or App at 804-06 (declining to review assignment of error because appellant's failure to comply with ORAP 5.45 impaired our review of the assignment); *Strawn v. Farmers Ins. Co.*, 228 Or App 454, 475, 209 P3d 357 (2009), *aff'd in part and rev'd in part on other grounds*, 350 Or 336, 258 P3d 1199, *adh'd to on recons*, 350 Or 521, 256 P3d 100 (2011), *cert den*, 565 US 1177 (2012) (declining to reach claims of error because noncompliance with ORAP 5.45 left the court unable to determine what rulings were being challenged and whether the bases for the challenges were preserved below); *Benjamin v. Wal-Mart Stores, Inc.*, 185 Or App 444, 464, 61 P3d 257 (2002), *rev den*, 335 Or 479 (2003) ("If a party does not identify a specific legal, procedural, factual, or other ruling by the trial court, ORAP 5.45(3), there is nothing for this court to review."); *cf. Drake v. Alonso*, 285 Or App 620, 625, 625 n 3, 396 P3d 961 (2017) (exercising discretion to review appellant's assignment of error that failed to comply with ORAP 5.45(4)(a) where purposes of preservation requirement were otherwise satisfied and our ability to review the argument was not impaired).

In this case, plaintiff articulates its assignments of error as follows:

(1) "The trial court erred in considering a challenge to the Architect's decisions when Defendant failed to plead an appropriate defense."

(2) "The trial court erred in considering a challenge to the Architect's decisions when Defendant failed to join LCC as a party."

(3) "The trial court erred in rejecting the Architect's decisions and instructions using a 'reasonableness,' rather than subjective good faith, standard."

(4) "The trial court erred in placing the burden of proving the propriety of the Architect's Decisions on [plaintiff]."

None of those assignments identifies a "legal, procedural, factual, or other ruling that is being challenged," as required by ORAP 5.45(3). Plaintiff does not, for example, identify a dismissal, summary judgment, or other motion that presented the underlying legal issues to the trial court for decision; relatedly, plaintiff does not identify any rulings on such motions that would give plaintiff something to challenge on appeal.[8]

Rather, it seems that plaintiff is attempting to challenge the court's final judgment, based on rulings that plaintiff *assumes* the court made. Plaintiff summarizes its appellate arguments this way:

"Because the trial court applied an incorrect legal standard, its rulings must be reversed. Because Defendant did not plead a defense challenging the Architect's actions and no evidence supports a finding that the Architect acted in subjective bad faith, and Defendant admitted that it refused to perform work required by its Subcontract, this court should remand for entry of judgment in [plaintiff's] favor[.]"

---

[8] As explained below, the directed-verdict motion that plaintiff combined with its trial memorandum did not adequately call the trial court's attention to the issues that plaintiff raises on appeal, nor did it seek a ruling from the trial court on those points.

We have previously observed that a directed-verdict motion may not be apt in a court trial, *see Dillard and Dillard*, 179 Or App 24, 28 n 2, 39 P3d 230, *rev den*, 334 Or 491 (2002) ("[T]here can be no directed verdict in a case tried to the court."). However, there was no objection to plaintiff's motion in the trial court, and we have no need to consider on appeal whether it was a proper motion.

Similarly, under a heading entitled "Correct Result" (bold-face omitted), plaintiff states, "The undisputed evidence here required a finding that the Architect acted in subjective good faith, enforcement of the relevant terms of Defendant's Subcontract, and an award to [plaintiff]."

Thus, as we understand it, the general theory underlying plaintiff's appeal is that, because, according to plaintiff, the subcontract required defendant to complete the work to the architect's satisfaction, and the undisputed evidence demonstrated defendant's failure to perform all of the work that the architect required, plaintiff was entitled as a matter of law to prevail on both claims—that is, plaintiff was entitled to recover its costs for completing the work (plaintiff's claim for breach of contract) and plaintiff was excused from paying defendant unpaid amounts under the contract (defendant's counterclaim for breach of contract). In other words, plaintiff contends generally that the trial court was required—as a legal matter—to decide in its favor on both claims, and its assignments of error attempt to challenge legal rulings that plaintiff assumes that the court *implicitly* made in coming to a contrary decision on those claims.

In particular, plaintiff's theory necessarily assumes that the court decided that the architect did not accept certain of defendant's work under the subcontract; that defendant challenged the architect's decisions; that defendant did not need to raise that challenge as an affirmative defense; that an objective "reasonableness" standard—rather than a subjective, "good faith" standard—applied to the architect's decisions; that the architect's decisions were not objectively reasonable—and plaintiff did not prove otherwise; and, consequently, that the provisions of the subcontract that conditioned payment to defendant on the architect's approval of the work were "ineffective."

On appeal, plaintiff challenges most of those assumed aspects of the trial court's decision. The problem for plaintiff is that it has not shown that it clearly presented those legal issues to the trial court for decision, and our review of the record suggests that plaintiff did not do so. Unsurprisingly, then—and as we explain in more detail below—plaintiff has not demonstrated to our satisfaction that the court ever

ruled on the legal questions plaintiff now contends entitle it to judgment in its favor.

With respect to its first and second assignments of error, plaintiff contends that it preserved its arguments in its "trial brief and motions for a directed verdict" (directed-verdict motion), pointing specifically to a footnote in that 41-page document. The gist of plaintiff's first assignment is that the unreasonableness or bad faith of the architect's decisions is an affirmative defense to plaintiff's breach of contract claim that defendant was required to plead and prove, and that the trial court erred in implicitly deciding otherwise. In its second, related, assignment of error, plaintiff argues that defendant was required to join LCC as an additional counterclaim defendant. The footnote on which plaintiff relies for preservation provides:

> "Defendant did not plead any defense based on the Architect's lack of good faith in the Architects' decisions to reject Defendant's work and require correction, except perhaps indirectly through Defendant's 'impossibility' defense.[9] * * *. *If Defendant wanted to challenge the Architects' rejections of its work, it needed to file a Claim and, if it did not like the Architect's decision, appeal through the dispute resolution process set out in the General Conditions. In other words, Defendant had to join LCC in this action and litigate the appropriateness of those decisions.* It is way too late to do that now and, without LCC as a party, Defendant cannot collaterally attack those decisions under the guise of asserting a 'defense' against [plaintiff]."

(Emphasis added.)

Initially, we note that the footnote appears to be contradictory. The first emphasized sentence says that defendant was required to file a "Claim" and follow an extra-judicial process (the "dispute resolution process" described in the contract between LCC and plaintiff) if it disagreed with any of the architect's decisions. Then, in the next sentence, it refers to joining LCC and litigating those questions *"in this action."* (Emphasis added.) But, in any event, that footnoted discussion was insufficient to alert the trial court

---

[9] The trial court ultimately struck defendant's "impossibility" defense, on the ground that it was not a legal defense, but, rather, went to the question of breach.

to plaintiff's appellate contention, which is fundamentally different—essentially that, under the terms of the subcontract, plaintiff was entitled to judgment as a matter of law on both claims because defendant was required to, and did not, plead and prove the unreasonableness of the architect's decisions as an affirmative defense to plaintiff's breach of contract claim or join LCC as a party to defendant's own counterclaim.[10] And plaintiff never attempted to clarify that position at the hearing on its directed-verdict motion. Accordingly, we decline to address plaintiff's first and second assignments of error.

Similarly, plaintiff contends that it preserved its third and fourth assignments of error "in its complaint, reply, trial brief, opening statement, and closing argument." We have examined the excerpts of those pleadings, documents, and transcript pages that plaintiff contends support preservation and nowhere is it clear that the trial court was presented with—and ruled on—the legal arguments that plaintiff raises in those assignments. Plaintiff argues, in its third assignment, that the court erred in "apparently finding" that the architect's demands were unreasonable—thus excusing defendant's failure to "complete the intumescent coating work, apply the second coat of masonry sealant required by the specifications, and fix the items remaining on the punch-lists"—because the court should have applied the law of "satisfaction contracts," which, according to plaintiff, requires that a "subjective, good faith" standard, rather than an "objective reasonableness" standard, apply to the architect's decisions. And, plaintiff contends in its fourth assignment, the trial court implicitly required plaintiff to prove the propriety of the architect's decisions when, in plaintiff's view, that burden belonged to defendant. However, plaintiff never argued those legal points to the trial court; indeed, plaintiff never raised the law of "satisfaction contracts" or addressed with the trial court the appropriate burden of proof.[11] Nor is it clear to us from the trial court's

---

[10] Plaintiff cited no law to support its theory that unreasonableness/bad faith was required to be raised as an affirmative defense in a breach of contract action or for the proposition that defendant was required to join LCC as a party.

[11] To the extent that plaintiff's third and fourth assignments of error implicate the trial court's ruling in favor of defendant on defendant's counterclaim for

ruling that the trial court decided the case on the basis that the architect's demands were unreasonable and plaintiff failed to prove otherwise, as plaintiff would have us assume.

Rather, the parties indicated to the court that the case was a "punch-list" case and much of the evidence presented by the parties focused on the quality and quantity of defendant's work and plaintiff's purported damages. From its discussion on the record, the trial court appears to have ruled, based on its assessment of the credibility of the parties' respective witnesses, that plaintiff had not proved its allegations of breach (or of damages) *as a factual matter*, and defendant had, not because the court determined that the architect acted unreasonably and plaintiff failed to prove otherwise.

Plaintiff did not request summary judgment based on the legal issues it now raises or otherwise focus the court's attention on those issues. *See Peeples*, 345 Or at 219 ("'A party owes the trial court the obligation of a sound, clear and articulate motion, objection or exception, so as to permit the trial judge a chance to consider the legal contention or to correct an error already made.'" (Quoting *Shields*, 277 Or at 77.)).

We acknowledge that glimpses of plaintiff's legal theory can be found in its closing argument. For example, in discussing "standard of performance," plaintiff argued that the contract required defendant to "[d]o whatever is necessary to get final acceptance of your work by the architect." And, after discussing the evidence in some detail—and in the midst of arguing that defendant had breached the subcontract by failing to apply the intumescent coating according to the manufacturer's specifications—plaintiff argued:

> "Now, that's on the merits, but I really want to convey to you that the merits are a bit irrelevant here in the sense is that it's the architect. We have to—we have to satisfy the architect. All the subcontractors have to satisfy the architect. So we have no choice but to do what the architect says when the architect gives an order like shutting this down.

breach of contract, we further note that the trial court denied plaintiff's motion for directed verdict on that claim, and plaintiff does not assign error to that ruling.

"And this lawsuit is not the right forum to second guess the merits of the architect's decision, because the contract process—the contract says: Do what the architect says. If you're entitled to more money, file a claim. Give the notice. See if you get more money. If you don't, follow the dispute resolution procedure."

That statement, however, was immediately followed by plaintiff's contention that defendant not applying the coating "according to specs" was "a breach and entitles us to relief"—an evidence-based argument entirely distinct from plaintiff's legal arguments on appeal.[12] Thus, the types of arguments plaintiff raises on appeal did not provide the trial court with enough clarity to permit the court to consider and correct any error, if warranted.[13] *Cf., State v. Geyer*, 287 Or App 25, 33-34, 401 P3d 1259 (2017) (issue not preserved for appeal where the defendant's presentation of the issue for the first time in closing argument did not fairly apprise the trial court that the defendant sought a ruling on the question and deprived the state of a fair opportunity to address it). As we said in *State v. Blasingame*, 267 Or App 686, 691, 341 P3d 182 (2014), *rev den*, 357 Or 299 (2015), "[a]lthough there is some degree of liberality to the preservation requirement, the requirement is not meant to be 'a cursory search for some common thread, however remote, between an issue on appeal and a position that was advanced at trial.'" (Quoting *State v. Stevens*, 328 Or 116, 122, 970 P2d 215 (1998).) The policies of fairness and efficiency underlying the preservation requirement—that is, to ensure that "a party provides sufficient information to enable opposing parties to meet an objection and the trial court to avoid error," *State v. Walker*, 350 Or 540, 550, 258 P3d 1228 (2011)—were not satisfied here.

---

[12] To the extent plaintiff is challenging the evidentiary basis for the trial court's conclusion that plaintiff did not prove its allegation of breach related to application of the intumescent coating, we also reject that challenge. The trial court apparently found that plaintiff prevented defendant from completing that work, and there is evidence in the record to support that finding.

[13] Nor did plaintiff raise any objection or otherwise dispute the court's fact-based reasoning when it announced its ruling from the bench. *Cf. State v. Wilson*, 240 Or App 475, 484-85, 248 P3d 10 (2011) (defendant's appellate argument was preserved when, in colloquy during closing argument in a bench trial, "the trial court advanced—and defense counsel patently disputed—" the same theory of liability on which the court ultimately predicated its determination of guilt).

In sum, because plaintiff's appellate arguments were neither preserved in the trial court nor properly raised on appeal in accordance with ORAP 5.45, we do not consider them. Accordingly, we affirm.

Affirmed.