DEHOOG, P. J.
*145 *734 Plaintiff appeals the trial court's dismissal of its forcible entry and detainer (FED) action against defendant. Defendant was a tenant of a building that plaintiff owned in downtown Portland. Plaintiff filed an FED action alleging that defendant had let the building fall into gross disrepair despite defendant's continuing obligation under the lease to maintain the building in good condition. Plaintiff raises six assignments of error, including challenges related to the trial court's interpretation of the lease, its ruling that plaintiff's notice of default was inadequate, the court's admission of a defense witness's testimony, its ruling in favor of defendant's affirmative defenses of laches and waiver, and the court's award of attorney fees to defendant. We affirm the dismissal of plaintiff's FED action based on the equitable defense of laches, because plaintiff failed to preserve its challenge to that ruling for appeal. As a result, it is unnecessary to discuss the trial court's alternative grounds for dismissal.[1] We conclude, however, that the court abused its discretion in awarding the attorney fees ordered in its first supplemental judgment and we therefore vacate and remand that judgment for reconsideration. Further, that disposition requires us to likewise vacate the second supplemental judgment awarding attorney fees and costs in connection with the first supplemental judgment. Accordingly, we vacate and remand both supplemental judgments, but otherwise affirm.
The historical and procedural facts relevant to our decision are undisputed. This FED action involves the Richmond Building in downtown Portland. The lease at issue has been in place since the building's original tenant, J.J. Newberry, Co. (Newberry), built it in 1956. Newberry designed the building for a retail operation that would span across two buildings-the Richmond Building and the adjacent Failing Building. Each building was subject to a separate lease; only the Richmond Building lease is at issue here. Under that lease, the tenant is responsible for separating the two buildings at the expiration of the lease. The lease is "triple-net," meaning that the tenant has agreed to *735 pay all real estate taxes, insure the building, and maintain and repair the building.
After it built the Richmond Building, Newberry sold it to New York Life Insurance Company, which then leased the building back to Newberry. In 1986, the Calomiris family purchased the Richmond Building from New York Life. Newberry continued to lease the building until it filed for bankruptcy in 1996. In the course of its bankruptcy proceedings, Newberry negotiated with defendant, Ross Dress-for-Less, Inc., to take Newberry's position as the building's tenant. Defendant's assumption of the lease coincided with the beginning of a 10-year option period under the lease. The lease provided one additional 10-year option, which defendant exercised in 2006. In 2011, the Calomiris family transferred ownership of the Richmond Building to plaintiff, Makarios-Oregon, LLC, an entity established by three members of the family.
As noted, the lease required the tenant to separate the Richmond Building from the Failing Building at the expiration of the lease in 2016. In December 2014, defendant filed a declaratory judgment action in federal court to determine its obligations under that provision. Shortly thereafter, plaintiff sent defendant a notice of default, alleging that it had failed to comply with its obligation to maintain the building in a good and lawful state of repair. When, in May 2015, it concluded that defendant's response to the notice of default had been inadequate, plaintiff served defendant with a five-day notice to quit and surrender the premises. Plaintiff followed up on that notice by initiating this FED proceeding *146 in Multnomah County Circuit Court on May 26, 2015.
The trial court held a six-and-a-half day bench trial. Ultimately, the trial court dismissed plaintiff's FED complaint, relying on several alternative grounds raised by defendant. The court ruled from the bench that defendant's affirmative defenses of laches, waiver, and estoppel barred plaintiff's claims. The court further ruled that, even if plaintiff's claims were not otherwise barred, defendant was entitled to prevail on the ground that plaintiff's notice of default had been inadequate. Finally, the court ruled that *736 the parties' course of conduct demonstrated that defendant had not violated the lease's continuing maintenance obligation. The trial court explained that each ruling was an alternative ground on which to find in defendant's favor.[2]
As the prevailing party, defendant then petitioned the trial court for costs and attorney fees as authorized under the lease and by statute. Plaintiff moved to stay the determination of attorney fees pending this appeal, but the trial court denied plaintiff's motion. Plaintiff then filed written objections to defendant's request for fees, and both plaintiff and defendant submitted written expert testimony regarding the reasonableness of defendant's request. Following a hearing on defendant's petition, the court entered a supplemental judgment awarding defendant attorney fees and costs. Defendant subsequently filed a supplemental petition to recover the fees and costs it had incurred in filing the fee petition and responding to plaintiff's motion to stay. Both parties waived oral argument regarding defendant's supplemental petition and relied solely on their written submissions. The court entered a second supplemental judgment awarding defendant its additional attorney fees and costs and explained that award in a brief letter opinion. All told, the court awarded defendant $657,166.45 in attorney fees and $82,752.62 in costs.
In multiple assignments of error, plaintiff challenges each of the trial court's alternative bases for dismissing the FED action; however, because it is dispositive, we address only plaintiff's challenge to the court's reliance on laches as a basis to dismiss plaintiff's action. Plaintiff's argument on appeal is that laches is inapplicable to continuing covenants, as plaintiff characterizes defendant's obligation under the lease to maintain and repair the Richmond Building. As a result, plaintiff contends, the court erred in concluding that laches barred its claim. Plaintiff did not, however, make that argument to the trial court. And because, as we explain below, plaintiff's challenge to that independent basis for the court's ruling is therefore not preserved for appeal, we affirm the judgment dismissing plaintiff's complaint on that ground.
*737 Our decision rests on the principle that we generally will not consider claims of error that were not raised in the trial court. State v. Walker , 350 Or. 540, 548, 258 P.3d 1228 (2011) ; see also John Hyland Const., Inc. v. Williamsen & Bleid, Inc. , 287 Or. App. 466, 471, 402 P.3d 719 (2017) ("In our system of justice, the purpose of an appeal is not to give the appellant an opportunity to pursue a new theory that it did not rely on below. Rather, 'the function of appellate review' is 'to correct errors of the trial court.' " (Quoting Falk v. Amsberry , 290 Or. 839, 843, 626 P.2d 362 (1981).) ). " '[T] he preservation rule is a practical one, and close calls * * * inevitably will turn on whether, given the particular record of a case, the court concludes that the policies underlying the rule have been sufficiently served.' " Walker , 350 Or. at 548, 258 P.3d 1228 (quoting State v. Parkins , 346 Or. 333, 341, 211 P.3d 262 (2009) ). The policies underlying the rule of preservation include giving the trial court a chance to consider and rule on an issue, thereby possibly avoiding an error altogether and obviating the need for an appeal. Id. The rule also promotes fairness to opposing parties so that they are not taken by surprise or denied opportunities to meet an argument. Id. ; see also *147 John Hyland Const., Inc. , 287 Or. App. at 472, 402 P.3d 719 (the preservation requirement is "a fundamental principle of appellate jurisprudence, serving the important policy goals of fairness to the parties and the efficient administration of justice").
Those policies were not served here. It is true that, in the trial court, plaintiff argued as a general matter that laches did not apply. Plaintiff's argument, however, was that the defense of laches did not apply because the evidence did not support it. Specifically, plaintiff argued as a factual matter that it had not unreasonably delayed serving defendant with notice of default. For example, in its trial brief, plaintiff argued that laches did not bar its claim because it had "acted promptly" and there was no basis on which to find "any substantial delay" that had worked to defendant's detriment. And, in closing, plaintiff argued in conjunction with both its statute of limitations and laches defenses that "there's no unreasonable delay here." But that is substantively different from the argument that plaintiff seeks to advance on appeal. Plaintiff's argument to us is not that laches does *738 not apply because there is insufficient evidence of unreasonable delay; rather, plaintiff argues that laches does not apply as a matter of law. And, as we have recently explained, a fact-based argument that a defense does or does not apply is "qualitatively different" from a legal argument regarding the proper application of the defense. State v. Gray , 286 Or. App. 799, 806-07, 401 P.3d 1241 (2017), rev. den. , 362 Or. 482, 412 P.3d 199 (2018) (finding argument on appeal unpreserved; despite the "common thread" that arguments at trial and appeal were both based upon statute of limitations, the arguments were qualitatively different); see also State v. K. J. B. , 282 Or. App. 862, 867-69, 387 P.3d 467 (2016), aff'd , 362 Or. 777, 416 P.3d 291 (2018) (finding argument on appeal unpreserved; although arguments at trial and appeal were both based on sufficiency of the evidence, the bases were qualitatively different). Plaintiff's fact-based argument would not have alerted the trial court or defendant to its legal argument that laches did not apply because plaintiff was seeking to enforce a continuing covenant.
Furthermore, although plaintiff asserts that it adequately preserved a legal argument against the application of laches, we are not persuaded. That is because plaintiff relies on the fact that it argued as a matter of law that the defense of waiver did not apply to continuing obligations, but does not explain how an argument that a different defense did not apply would have provided notice of its contention that laches was barred by the same principle. Thus, plaintiff's waiver argument did not provide an opportunity for the trial court to consider and rule on whether a continuing obligation under a lease precludes a laches defense, nor was defendant given an opportunity to respond to that argument. Under those circumstances, the policies underlying the preservation rule are not served, and plaintiff's laches argument is not preserved for appeal. Accordingly, we affirm the trial court's dismissal of plaintiff's FED action.[3]
Plaintiff next assigns error to the trial court's award of attorney fees to defendant in the two supplemental judgments, arguing that the court abused its discretion. As *739 to the first supplemental judgment, plaintiff argues that, for various reasons, the court's fee award was excessive. And, as to the second supplemental judgment, in which the court awarded defendant its fees incurred in defending its initial attorney fee petition, plaintiff argues that the trial court abused its discretion by awarding fees without issuing supporting findings or conclusions. For the reasons that follow, we conclude that the trial court abused its discretion in one respect when it awarded defendant attorney fees in the first supplemental judgment. We therefore vacate and remand that judgment. And, as we explain below, that disposition requires us to likewise vacate and remand the second supplemental judgment.
Whether a party is entitled to attorney fees presents a question of law, but whether fees are reasonable is a factual determination that we review for abuse of discretion. Bennett v. Baugh , 164 Or. App. 243, 247, 990 P.2d 917 (1999), rev. den. , 330 Or. 252, 6 P.3d 1099 (2000) ; ORS 20.075(3) ("In *148 any appeal from the award or denial of an attorney fee subject to this section, the court reviewing the award may not modify * * * the decision of the court as to the amount of the award, except upon a finding of an abuse of discretion."). An abuse of discretion occurs when a court exceeds the rules that circumscribe its authority. Northwest Pump & Equipment Co. v. Stach , 167 Or. App. 64, 69, 1 P.3d 466 (2000). When a losing party opposes the allowance of attorney fees, "the successful party bears the burden of proving the amount of the fee and the reasonableness thereof." Hillsboro v. Maint. & Const. Serv. , 269 Or. 169, 172, 523 P.2d 1036 (1974). And, to prove the reasonableness of its requested fees, the successful party must furnish a detailed statement that shows the value of the legal services that relate to the action. Parker v. Scharbach , 75 Or. App. 530, 535, 707 P.2d 85 (1985) ; ORCP 68 C(4)(a)(i).
The parties' lease provided a basis for plaintiff-but not defendant-to recover attorney fees. Section 6.02 states:
"The Tenant covenants and agrees to pay, and to indemnify the Landlord against, all legal costs and charges, including counsel fees, lawfully and reasonably incurred in obtaining possession of the demised premises after default of the Tenant or upon expiration or earlier termination of *740 the demised term, or in enforcing any covenant or agreement of the Tenant herein contained."
Defendant, however, sought attorney fees and costs under ORS 20.096(1), which provides:
"In any action or suit in which a claim is made based on a contract that specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the party that prevails on the claim shall be entitled to reasonable attorney fees in addition to costs and disbursements, without regard to whether the prevailing party is the party specified in the contract and without regard to whether the prevailing party is a party to the contract."
Thus, although the lease provided a contractual basis only for plaintiff to recover attorney fees, defendant had a statutory right to attorney fees by virtue of ORS 20.096(1). Accordingly, neither party disputes that the court's authority to award attorney fees to defendant was pursuant to statute rather than the lease. Cf. Village at North Pointe Condo. Assn. v. Bloedel Const. , 278 Or. App. 354, 368 n. 6, 374 P.3d 978, adh'd to on recons. , 281 Or. App. 322, 383 P.3d 409 (2016) (noting that when the right to attorney fees arises from a contract, rather than by statute, the trial court is not required to consider the ORS 20.075 factors but does not abuse its discretion in doing so).
"[I]n determining the amount of an award of attorney fees in any case in which an award of attorney fees is authorized or required by statute," a court must consider both the factors set out in ORS 20.075(1) (factors relevant to whether to award discretionary fees) and ORS 20.075(2) (factors court must consider, together with subsection (1) factors, in determining the amount of an award). ORS 20.075(2). The ORS 20.075(2) factors include:
"(a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.
"(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.
*741 "(c) The fee customarily charged in the locality for similar legal services.
"(d) The amount involved in the controversy and the results obtained.
"(e) The time limitations imposed by the client or the circumstances of the case.
"(f) The nature and length of the attorney's professional relationship with the client.
"(g) The experience, reputation and ability of the attorney performing the services.
"(h) Whether the fee of the attorney is fixed or contingent."
Although a court has broad discretion when determining an appropriate award, its exercise of discretion must be accompanied by findings regarding the relevant *149 ORS 20.075 factors. Northwest Pump & Equipment Co. , 167 Or. App. at 69, 1 P.3d 466. As we have previously observed, "the relevant case law indicates that the courts must describe the effect of each of the factors on which they rely in setting fees." Id. at 70, 1 P.3d 466. To be adequate, the court's findings need not be lengthy or complex, but they must describe the relevant facts and legal criteria underlying the court's decision in terms that are sufficiently clear to permit meaningful appellate review. See McCarthy v. Oregon Freeze Dry, Inc. , 327 Or. 185, 190-91, 957 P.2d 1200 (1998).
Plaintiff does not dispute defendant's entitlement to attorney fees, but makes various arguments regarding the adequacy of both defendant's petition and the trial court's analysis and findings under ORS 20.075. Among other things, plaintiff argues that the fees awarded in the first supplemental judgment were excessive because (1) defendant unnecessarily relied on high-priced, out-of-state counsel when local counsel were capable of providing the necessary legal services; (2) defendant's fee petition reflected duplication of effort and improper block billing that warranted a 20 percent reduction across the board; and (3) defendant should not recover attorney fees incurred in litigating its *742 unsuccessful pretrial motion to dismiss. We address those arguments in turn.[4]
First, plaintiff argues that the trial court abused its discretion in awarding fees for several attorneys from a San Francisco law firm (the Crowell & Moring firm) whose hourly rates significantly exceeded the rates for comparable legal services in Portland, where the trial took place. Citing a federal magistrate's decision construing ORS 20.075 (2)(c), plaintiff argues that the court should have reduced its award of the Crowell fees by 30 percent to bring it in line with the part of the fee award associated with defendant's highly capable Portland attorneys. We disagree. Although ORS 20.075(2)(c) requires a trial court to consider "[t]he fee customarily charged in the locality for similar legal services," it does not by its terms impose a ceiling on the fees that a court may award. See Hanna LP v. Windmill Inns of America, Inc. , 223 Or. App. 151, 166, 194 P.3d 874 (2008) (upholding attorney fee award higher than what is "customarily charged" in southern Oregon based on trial court findings that case required specialized business litigators not readily available in the locality). And, as defendant points out, even though the Crowell firm's attorneys typically charge their clients 30 percent more per hour than their Portland counterparts, they had already reduced the fees charged-and ultimately requested in this case-by 10 percent. Moreover, despite noting that defendant's "relationship with the client, prior work on the lease, the complexity of the case in a compressed time frame and counsel's expertise" justified higher than typical rates in this case, see ORS 20.075(2)(f) - (g), the court nonetheless imposed a further 10 percent reduction on the Crowell firm's fees to bring them closer in line with those of comparable Portland attorneys. Under those circumstances, the trial court neither abused its discretion in declining to further reduce its award, nor failed to make findings adequate for judicial review.
*743 Next, plaintiff asserts that duplication of effort between defendant's San Francisco and Portland attorneys, together with block billing by the Crowell firm, warrants a further fee reduction of 20 percent, rather than the five percent reduction that the trial court imposed. In his declaration, plaintiff's expert, Skeritt, noted 90 instances of calls and emails between the two law firms. Skeritt also noted an exceptionally large number of timekeepers billing defendant (18, compared to 11 for plaintiff), as well as the Crowell firm's practice of block billing. Relying on those observations, plaintiff reasons that the amount of block billing-together with other lack of detail in those billings-makes it impossible to ascertain *150 whether the duplication of effort between the two firms resulted in fees that were cumulatively unreasonable. Thus, plaintiff argues, the trial court abused its discretion by insufficiently reducing the fee award to address those concerns.
For its part, defendant acknowledges that the Crowell firm engaged in block billing, but denies that it warranted a further reduction. Defendant argues that it was within the trial court's discretion to determine how large a reduction was necessary to address both that issue and the potential duplication in effort. Defendant further argues that, in any event, it was appropriate under the circumstances for the various attorneys to work together, and that the bulk of the legal work was done by only three attorneys. Moreover, because defendant's Portland attorneys properly accounted for their time without block billing, the court could adequately review the reasonableness of the time that the firms spent performing various tasks together. Finally, defendant points out that plaintiff has offered no argument explaining why the court's choice of a five percent reduction of Crowell's billings over plaintiff's requested reduction of 20 percent as to both firms' billings reflected an abuse of discretion, given that only the Crowell firm block billed.
We conclude that defendant has the better argument. That is, the manner in which the trial court chose to address the Crowell firm's block billing fell within the court's broad range of discretion. Although we agree with plaintiff that the practice of block billing is disfavored in *744 Oregon and is difficult to reconcile with the obligation to provide detailed statements in support of fee requests, see Parker , 75 Or. App. at 535, 707 P.2d 85 (parties must provide a detailed statement showing the value of legal services relating to the action); ORCP 68 C(4)(a)(i) (same), the court's five percent reduction was reasonable in light of the circumstances and our case law.
For example, in Rosekrans v. Class Harbor Assn., Inc. , the plaintiffs' attorney had provided services both on behalf of the plaintiffs and other plaintiffs who had settled with the defendant. 228 Or. App. 621, 640, 209 P.3d 411 (2009). Although the plaintiffs' attorney had excised from his fee request any time spent solely on behalf of the settling plaintiffs, the trial court, "in an abundance of caution, * * * reduced the number of hours by an additional 10 percent to represent a reasonable allocation between time spent on fee-generating claims and on other matters." Id . (internal quotation marks and brackets omitted); see also Bennett , 164 Or. App. at 247, 990 P.2d 917 (a court must apportion attorney fees between claims for which fees are authorized and claims for which they are not, "except when there are issues common to both claims"). Notwithstanding those measures, the defendant argued on appeal that the trial court had erred in awarding fees "for work reflected in block billing entries," because those entries did not indicate which work related to claims for which fees were authorized. Rosekrans , 228 Or. App. at 641, 209 P.3d 411. The trial court, however, had determined that "the block billing approach by the plaintiffs' lawyers makes it difficult but not impossible to determine a fair estimate of time spent on the fee claims" and accordingly had, in addition to its earlier 10 percent reduction, applied a five percent reduction in hours "to account for the problems in block billing." Id. We held that, under the totality of the circumstances, the trial court had not "erred in its methodology or abused its discretion" in accounting for the block billing problem in that manner. Id .
Similarly, the trial court in this case acknowledged that block billing and duplication of effort were potential concerns. In evaluating the block-billed entries, the court explained:
*745 "[The defendant's attorney fee expert] made an attempt to identify what she believed was potentially the overlap between the two firms working together, which is really what the objection to the block billing at its heart was by the plaintiff, that they couldn't tell how much duplication of effort there was, and so I believe that a five percent reduction in Crowell Moring's hours to account for the block billing and the duplication of effort is an appropriate way to deal with that issue."
Given the trial court's express recognition of the block-billing issue and the specific concerns *151 it raised for plaintiff, together with its explanation, based on the defense expert's evaluation of the billings, for adopting a five percent reduction, we are not persuaded that the trial court abused its discretion.
In its last challenge to the first supplemental judgment, plaintiff argues that the trial court abused its discretion by not apportioning attorney time spent on defendant's unsuccessful pretrial motion to dismiss from time spent working on matters contributing to defendant's overall success on plaintiff's FED claim. As noted above, when a party prevails on only one of several claims that are subject to an award of fees, "fees can be awarded only for the time reasonably necessary to prevail on the sole claim on which the party prevailed." Freedland v. Trebes , 162 Or. App. 374, 378, 986 P.2d 630 (1999). But where a party succeeds on a fee-generating claim that shares common issues with other claims or unsuccessful efforts, time spent working on those other matters is recoverable if it "was reasonably incurred to achieve the success that the [party] eventually enjoyed in the litigation[.]" Fadel v. El-Tobgy , 245 Or. App. 696, 709-10, 264 P.3d 150 (2011), rev. den. , 351 Or. 675, 276 P.3d 1123 (2012) (analogizing the prevailing party's fees incurred in connection with an ineffective first complaint to "a situation in which a plaintiff prevails only on some of several claims that go to trial" (citations and internal quotation marks omitted) ).
The problem in this case, however, is that the trial court never determined what role, if any, defense counsel's work on the unsuccessful motion to dismiss played in defendant's ultimate success. In response to plaintiff's argument on that point, the court merely stated:
*746 "With regard to the unsuccessful motion to dismiss, I think the defense is right. I don't think you get to cherrypick and say if you're the losing party, on a fee dispute, they didn't win on that particular issue so they don't get their fees. I think what it comes down to is a matter of reasonableness overall, and even though they were unsuccessful on that particular effort, they were successful in the case, and viewing the fees from the litmus test of whether they're reasonable, I think they were, and so I'm not reducing the amount requested by the defense based on that unsuccessful motion to dismiss."
The trial court properly recognized that, under the circumstances, the question is not whether defendant may be entitled to recover fees associated with its unsuccessful efforts; the question is whether the amount of those fees is reasonable. Id. ; see also Bennett , 164 Or. App. at 247-48, 990 P.2d 917 ("Whether and under what circumstances fees should be awarded for such work bears on the reasonableness of the amount requested, not entitlement."). That determination of reasonableness, however, turns on whether counsel's work on the unsuccessful motion to dismiss involved issues in common with the claim on which defendant prevailed and was "reasonably performed in helping [defendant] prevail." Fadel , 245 Or. App. at 710, 264 P.3d 150. Because the trial court never determined the relationship between defendant's motion to dismiss and the balance of its case, the court abused its discretion in awarding fees for that unsuccessful effort. See id . (noting the trial court's proper efforts to determine "which of the fees incurred * * * were reasonably related to the prosecution of the action and the result obtained and which were not" (internal quotation marks omitted) ). In light of that conclusion, we vacate and remand the first supplemental judgment for the trial court to make the appropriate determination.
In its final challenge, plaintiff argues that the trial court abused its discretion in entering the second supplemental judgment without accompanying findings or conclusions to support its additional award of attorney fees and costs.[5] Defendant responds that, because *152 plaintiff "made no *747 objections for the trial court to address"-and "makes no specific objections to the fees" on appeal-it cannot be heard to complain that the trial court failed to enter sufficient findings and conclusions in support of the fees it awarded. It is not necessary, however, for us to resolve that dispute. The award of attorney fees and costs in the second supplemental judgment relates to the first supplemental judgment, which we have just vacated; as a result, the second supplemental judgment "cannot stand." State ex rel Willamette Cmty. Hlth. Sols. v. Lane Cty. , 274 Or. App. 545, 554, 361 P.3d 613 (2015) ("Because we vacate the general judgment, the attorney-fee award cannot stand. See ORS 20.220(3)(a) (when an appeal is taken from a judgment to which an award of attorney fees relates, if the appellate court reverses the judgment, the award of attorney fees shall be deemed reversed)."). Accordingly, we also vacate and remand the second supplemental judgment.[6]
First and second supplemental judgments vacated and remanded for reconsideration; otherwise affirmed.

Our decision on that issue also obviates the need to address plaintiff's challenge to the admission of a defense witness's testimony.

After issuing that ruling from the bench at the conclusion of trial, the court entered a judgment dismissing plaintiff's FED action.

Plaintiff has not requested that we review the trial court's laches ruling as plain error.

Plaintiff additionally argued that defendant's requested attorney fees were necessarily excessive because they totaled approximately twice plaintiff's own fees. Among its other reasons for rejecting that argument, the trial court noted that plaintiff had not submitted any fee statements to the court; accordingly it could not meaningfully evaluate plaintiff's contention. We likewise reject that argument.

Defendant contends that plaintiff's challenge on those grounds is unpreserved. We note, however, that defendant requested that the court enter findings of fact and conclusions of law under ORCP 68 C(4) if plaintiff objected to its supplemental statement of attorney fees. Because, as we explain below, our disposition regarding the first supplemental judgment requires us to vacate and remand the second supplemental judgment, it is not necessary to conclusively determine whether that request by defendant was sufficient to preserve plaintiff's related challenge for appeal.

If, on remand, the trial court reduces the amount of fees previously awarded in the first supplemental judgment, it may, in its discretion, also conclude that it should reduce the amount previously awarded in the second supplemental judgment. See ZRZ Realty v. Beneficial Fire and Casualty Ins. , 257 Or. App. 180, 187 n. 5, 306 P.3d 661, rev. den. , 354 Or. 491, 317 P.3d 256 (2013) (permitting that outcome on remand). Whether or not it reduces either award, however, it will have an opportunity, if it so chooses, to further explain its supplemental award of "fees on fees."