No. 440 May 14, 2025 569

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Marriage of

Rachael Amundson HETTWER,
aka Rachael Renton, nka Rachael Swartout,
*Petitioner-Appellant,*
*and*

Kevin Edward HETTWER,
*Respondent-Respondent.*

Marion County Circuit Court
20DR03444; A179925

Donald D. Abar, Judge.

Submitted April 15, 2025.

Mark T. McLeod and McLeod & McLeod Attorneys at
Law filed the brief for appellant.

No appearance for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and
Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

In this domestic relations case, mother argues that the trial court erred when it permanently modified parents' custody arrangement based upon father's motion to enforce the parenting plan. In six assignments of error, she argues that (1) father did not file a "competent motion to seek a modification of custody/parenting time" or properly serve an order to show cause under ORS 107.135; (2) the trial court did not have authority under ORS 107.434 to modify custody; (3) the trial court did not comply with ORS 107.135(14) and allow her at least 30 days to submit a response; (4) the remedies imposed by the trial court were disproportional to the alleged violation and not authorized by ORS 107.434; (5) the trial court engaged in irregular hearing and process when it incorrectly understood the purpose of the enforcement hearing and "confused the parties"; and (6) assuming *arguendo* that the trial court could consider a permanent custody modification at the hearing, the trial court erred by refusing to allow and consider evidence regarding all of the "best interests" factors set out in ORS 107.137. Father does not appear on appeal. Because mother's arguments are unpreserved and she has not requested that we review for plain error, we affirm.

Mother and father divorced in 2020, and mother was granted sole custody of their two minor children with certain parenting time granted to father. The judgment stated that neither parent could move more than 60 miles from the other parent without reasonable notice. Mother retained the marital home with plans to sell it.

In 2022, mother filed a motion to modify the judgment to allow her to move to Idaho because the marital home had sold, she could not find suitable housing or work in Oregon, but she and her new husband could afford housing in Idaho. Father opposed and filed his own motion to modify the judgment and for a status quo order to enjoin mother from moving the children. The court entered a status quo order enjoining mother from moving the children out of the immediate area and required "the children to remain in their current school in the Silverton area." After unsuccessful mediation and a trial, a supplemental judgment was

entered that prohibited either parent from moving the children's primary residence "more than thirty miles from the Silverton School District" without 60 days advance notice, at which point the nonmoving party may file an objection.

The record shows that mother moved anyway and enrolled the children in school in Idaho. Father filed a motion to enforce the parenting plan under ORS 107.434 based upon mother's move to Idaho, her intermittent dropping off the children late for his parenting time, and her failure to provide him the children over one of his scheduled weekends. ORS 107.434 provides, in part:

"(2) In addition to any other remedy the court may impose to enforce the provisions of a judgment relating to the parenting plan, the court may:

"(a)  Modify the provisions relating to the parenting plan by:

"(A)  Specifying a detailed parenting time schedule;

"(B)  Imposing additional terms and conditions on the existing parenting time schedule; or

"(C)  Ordering additional parenting time, in the best interests of the child, to compensate for wrongful deprivation of parenting time;

"* * * * *

"(g)  Schedule a hearing for modification of custody as provided in ORS 107.135(11)."

The motion requested that the trial court place "the children in Father's care and custody until such time as Mother enrolls the children in a school in Oregon and Mother is residing within the geographic limitation imposed upon her by the court in its July 1, 2022, Supplemental Judgment (Modification)."

The court held a hearing on father's enforcement motion. Father was represented and mother appeared *pro se*. The court and father's counsel noted repeatedly that it was a proceeding about enforcing the plan and not custody modification, and the trial court questioned its authority under the statute to permanently modify custody:

"THE COURT:   [T]his is a motion to enforce *** parenting time and not a modification, so—

"[FATHER'S COUNSEL]:   Correct.

"THE COURT:   —as far as the legality of changing custody, that wouldn't be a permanent change of custody. That's a temporary change of custody to enforce a parenting plan, correct?

"[FATHER'S COUNSEL]:   No. You have the right to change it permanently.

"THE COURT:   Okay. I'd have to read the statute again.

"[FATHER'S COUNSEL]:   It's a very broad statute.

"* * * * *

"[FATHER'S COUNSEL]:   But, yes, it—it is a chance for you to make permanent change of custody, permanent termination of support."

The court appears to have relied on counsel's representation of ORS 107.434. Mother argued that she should be allowed to move to Idaho, that it was best for her and the children, and that father's accusations were unfounded, but she did not raise any argument regarding the court's authority to modify custody. At the end of the hearing, the court made its findings, and when discussing its questions to mother about returning to Oregon during the hearing, stated:

"I talked about it extensively on July 5th that I ordered that the kids would not be living in Idaho, that it was not in the best interest to have a vacation or a suitcase father living in Oregon.

"And the issues of how hard that was on mother, I reminded her that it was her choice to move to Idaho; that she created the situation and it put the Court in a very difficult situation.

"So the million-dollar question—and I asked it a couple of times today, whether she was going to obey the order and when would she bring those kids back, and I got no affirmative answer that those kids would be back here even if she had to leave them with father.

"And she could make no promises to that effect. So based on those violations, I do not believe that she will obey

a court order and I am going to award custody to the father at this time. She has been given notice of that, as [father's counsel] pointed out, by the service of the motion.

"And so we don't have to set another hearing on that. I will not order any additional parenting time since I'm changing custody. That change in custody should happen in the near future."

When discussing specific timing, the court explained:

"THE COURT:   And the parenting [plan] is in the proposed judgment. That's what it's going to be. If you [mother] move back to Oregon, you can change it.

"[FATHER'S COUNSEL]:   You mean ask that it be changed.

"THE COURT:   Ask to be changed. Thank you."

During the hearing, the court did not make a finding regarding a change in circumstances. *See Ellis v. Kyker*, 309 Or App 26, 27, 480 P3d 1048 (2021) ("A parent seeking a change in child custody must show that, since the last custody decision, there has been a material change in circumstances that is adverse to the child's welfare." (Internal quotation marks and brackets omitted.)). The court entered a " Supplemental Judgment (Enforcement)" after the hearing that states:

"IT IS HEREBY ORDERED that the General Judgment of Dissolution of Marriage previously entered herein dated August 19, 2020, is modified to provide as follows:

"1.   Custody of Children. Father is awarded the sole legal and physical custody of [the children], effective immediately."

On appeal, mother's arguments are based on the contention that the trial court lacked the authority to permanently modify custody during the proceeding. However, as a general rule, we will not consider claims of error that were not raised in the trial court. *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000); ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court * * *."). To adequately preserve an issue, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure

that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *Wyatt*, 331 Or at 343. To demonstrate preservation, an appellant must show that "the argument it makes on appeal is one that was presented to the trial court, giving that court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal." *John Hyland Const., Inc. v. Williamsen & Bleid, Inc.*, 287 Or App 466, 472-73, 402 P3d 719 (2017) (internal quotation marks omitted). We have explained that the primary purposes of the preservation rule are to allow the trial court to consider a contention and correct any error, to allow the opposing party an opportunity to respond to a contention, and to foster a full development of the record. *Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008). "[P]ro se litigants are bound by the same preservation rules that bind all other parties." *State v. Morrow*, 192 Or App 441, 444, 86 P3d 70, *rev den*, 337 Or 282 (2004).

At no point during the proceedings did mother challenge the trial court's authority to modify custody under ORS 107.434, nor did she challenge the method of the proceedings. Had mother raised those arguments, the trial court could have reviewed the statute, discussed with the parties, and potentially avoided any error altogether. Mother has not identified where in the record she raised an objection to the trial court's authority, and our review reveals none.

Importantly, mother does not request that we review for plain error.[1] Accordingly, we decline to undertake such an analysis. *See State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597, *rev den*, 358 Or 145 (2015) ("[W]e ordinarily will not proceed to the question of plain error unless an appellant has explicitly asked us to do so because it is incumbent upon the appellant to explain to us why an error satisfies the requisites of plain error and, further, why we should

---

[1] Mother requests that we exercise our discretion to review the trial court's custody determination *de novo*. ORS 19.415(3)(b); ORAP 5.40(8)(c). Even were mother's arguments preserved, we would decline to do so, because the trial court made express factual findings, including demeanor-based credibility findings, and mother does not identify any *factual* error in the trial court's custody determination, but rather argues only that the trial court legally erred in modifying custody under the authority granted by ORS 107.434. ORAP 5.40(8)(d).

exercise our discretion to correct that error." (Internal quotation marks omitted.)); *State v. Bigelow*, 238 Or App 344, 348, 242 P3d 719 (2010), *rev den*, 350 Or 130 (2011) (declining to review for plain error where the defendant did not assert that the argument made on appeal demonstrated an error of law that was "apparent on the face of the record").

Affirmed.