Argued and submitted June 10, 2022; reversed and remanded March 29; on respondent's petition for reconsideration filed April 5, and appellants' response to petition for reconsideration filed April 12, reconsideration allowed by opinion June 22, 2023
See 326 Or App 538, 532 P3d 1261 (2023)

Eric C. BUSH,
an individual,
*Plaintiff-Respondent,*

*v.*

CITY OF PRINEVILLE,
a political subdivision of
the State of Oregon, and
Michael Boyd, an individual,
*Defendant-Appellants,*

*and*

LEAGUE OF OREGON CITIES
and Association of Oregon Counties,
dba Local Government Personnel Institute,
*Defendants.*

Crook County Circuit Court
14CV08987; A175868 (Control)

Eric C. BUSH,
an individual,
*Plaintiff-Respondent,*

*v.*

CITY OF PRINEVILLE,
a political subdivision of
the State of Oregon, and
Michael Boyd, an individual,
*Defendants,*

*and*

LEAGUE OF OREGON CITIES
and Association of Oregon Counties,
dba Local Government Personnel Institute,
*Defendants-Appellants.*

Crook County Circuit Court
14CV08987; A175907

529 P3d 970

Defendants appeal from a third supplemental judgment awarding attorney fees to plaintiff. Plaintiff accepted an offer of judgment in an amount that exceeded the statutory cap on liability under ORS 30.272(2)(f), a provision addressing the limitations on liability of local public bodies in the Oregon Tort Claims Act. Defendants argue that plaintiff is not entitled to attorney fees, because the award exceeds the limitation on liability. *Held*: Based on a review of the statute's text, context, and legislative history, the Court of Appeals concluded that the limitation on liability in ORS 30.272(2)(f) applies to damages, not attorney fees. As a result, the statute does not preclude an award of attorney fees to plaintiff. However, the Court of Appeals reversed and remanded the third supplemental judgment for the trial court to apportion fees between the defendants after the trial court entered a stipulated limited judgment, and to determine whether plaintiff incurred reasonable fees after entry of that judgment. Mooney, J. wrote a dissenting opinion.

Reversed and remanded.


A. Michael Adler, Senior Judge.

Robert E. Franz, Jr. argued the cause for appellants, City of Prineville and Michael Boyd. Also on the briefs was the Law Office of Robert E. Franz, Jr.

Lindsay H. Duncan argued the cause for appellants, League of Oregon Cities and Association of Oregon Counties. Also on the briefs were Janet M. Schroer and Hart Wagner LLP.

Roxanne L. Farra argued the cause for respondent. Also on the brief were R. Kyle Busse, Roxanne L. Farra, P. C. and Markowitz Herbold PC.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Reversed and remanded.

Mooney, J., dissenting.

## PAGÁN, J.

This case comes before us for the third time, as we again address supplemental judgments awarding attorney fees to plaintiff. In the first appeal, we reversed a supplemental judgment awarding plaintiff $639,932 in attorney fees and we remanded for further proceedings. *Bush v. City of Prineville*, 301 Or App 674, 676, 457 P3d 324 (2020) (*Bush I*). In the second appeal, without reaching the merits, we reversed and remanded. *Bush v. City of Prineville*, 301 Or App 697, 698, 456 P3d 334 (2020) (*Bush II*). On remand, the trial court entered its third supplemental judgment, awarding plaintiff attorney fees of $623,484.83 against the City of Prineville (the city) and the Local Government Personnel Institute (LGPI), jointly and severally.

On appeal, the city and LGPI (collectively, defendants) raise several assignments of error. They argue that plaintiff is not entitled to attorney fees because of the limitations on liability in the Oregon Tort Claims Act, ORS 30.260 to 30.300 (OTCA). We agree with the trial court that ORS 30.272(2)(f) does not preclude an award of attorney fees because its limitation on liability applies to damages.[1] However, we reverse the third supplemental judgment and remand for the trial court to apportion fees between the city and LGPI after December 2, 2014, and to determine whether plaintiff incurred reasonable fees from December 3, 2014 to September 10, 2015.[2]

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff served as the city's police chief, and he also served in the Oregon National Guard. *Bush I*, 301 Or App at 676. In 2013, the city retained LGPI to investigate plaintiff's

---

[1] ORS 30.272 was added to the OTCA in 2009. Or Laws 2009, ch 67, § 4. The statute was amended in 2019 in a way that is not material to our analysis. Or Laws 2019, ch 12, § 2. For that reason, we will refer to the current version of the statute.

[2] The third supplemental judgment does not address plaintiff's supplemental requests for attorney fees. Those requests are not mentioned in the trial court's findings of fact and conclusions of law, or in its third supplemental judgment. We express no opinion regarding plaintiff's requests, if any, for attorney fees incurred after September 10, 2015.

use of leave from his police duties to perform National Guard duties. *Id.* On September 3, 2013, the city placed plaintiff on administrative leave. On July 15, 2014, based on the results of LGPI's investigation, the city terminated plaintiff.

One day later, on July 16, 2014, plaintiff filed a complaint against the city, LGPI, and the city's police captain. Plaintiff's first claim for relief asserted a count against the city for discrimination against a uniformed service member in violation of ORS 659A.082. The first claim for relief also asserted a count against LGPI for aiding and abetting discrimination in violation of ORS 659A.030(1)(g). Plaintiff's second and third claims against the city were for wrongful discharge and intentional infliction of emotional distress. Plaintiff's fourth claim, filed against the city's police captain, was for defamation.

Less than three months later, in early October 2014, the city and its police captain made an ORCP 54 E offer of judgment, offering to allow judgment to be entered against them in the amount of $667,701, "plus reasonable attorney fees, costs and disbursements as determined pursuant to ORCP 68." On October 8, 2014, plaintiff accepted the offer, and, on December 2, 2014, the trial court entered an amended stipulated limited judgment against the city and its police captain. The judgment awarded plaintiff $666,701, and reasonable attorney fees, "with the amount of same to be determined by this Court at a later date pursuant to ORCP 68." In May 2015, LGPI made an ORCP 54 E offer of judgment which plaintiff accepted. On August 13, 2015, the trial court entered a stipulated general judgment against LGPI on plaintiff's claim for aiding and abetting discrimination. The judgment awarded plaintiff $250,001 against LGPI, and reasonable attorney fees, "with the amount of same to be determined by this Court at a later date pursuant to ORCP 68."

On September 10, 2015, plaintiff filed a statement for attorney fees. Defendants filed objections and the trial court held a hearing in May 2016. In April 2017, the trial court issued a letter ruling and order awarding plaintiff all of his requested attorney fees. On August 7, 2017, the trial

court entered a supplemental judgment awarding plaintiff attorney fees of $639,932. On appeal, we concluded that the trial court erred in awarding fees for claims other than the claims relating to wrongful discrimination under ORS 659A.082. *Bush I*, 301 Or App at 683-84. We reversed the supplemental judgment and remanded for further proceedings. *Id.* at 684. On the same day, we reversed a second supplemental judgment, which had denied plaintiff's request for "fees on fees." *Bush II*, 301 Or App at 698.

On remand, plaintiff deducted fees for work associated with the wrongful discharge, intentional infliction of emotional distress, and defamation claims. Plaintiff deducted $15,670.00 from his request, resulting in a new fee and cost request of $625,916.88. The city and LGPI filed objections. The city argued, among other things, that the award of attorney fees exceeded the limitation on liability in ORS 30.272. The city also objected to the amount of fees. LGPI objected, arguing that plaintiff failed to separate and identify the fees relating to his aiding and abetting claim. In October 2020, the trial court held a hearing and requested that the parties submit proposed findings of fact and conclusions of law.

On February 26, 2021, the trial court adopted plaintiff's proposed findings of fact and conclusions of law. The trial court found that plaintiff's acceptance of the city's offer of judgment formed "a *global* settlement contract of his claims." (Emphasis in original.) The court found that the limitations on liability in the OTCA did not apply. Addressing apportionment, the trial court found that plaintiff was not required to separate fees relating to LGPI's aiding and abetting claim. In its third supplemental judgment, entered on April 16, 2021, the trial court awarded attorney fees of $623,484.83 against the city and LGPI, jointly and severally. The city and LGPI appeal.

## II.   ANALYSIS

We begin with the city's second assignment of error. It presents a question of statutory construction, which we review for errors of law. *OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 585, 341 P3d 701 (2014). LGPI joins in the argument.

A.   *The limitation on liability in ORS 30.272(2)(f) applies to damages, not attorney fees.*

Based on the judgment entered against the city in the amount of $667,701, the city claims that the limitation on liability in ORS 30.272(2)(f) has been exceeded. Therefore, according to the city and LGPI, the trial court erred in awarding any attorney fees to plaintiff. That argument requires us to construe ORS 30.272(2)(f), which we do by applying the principles set forth in *State v. Gaines,* 346 Or 160, 206 P3d 1042 (2009). We attempt to discern the meaning of the statute intended by the legislature, examining the text in context, any relevant legislative history, and pertinent rules of interpretation. *Id.* at 171-72.

1.   *Text*

ORS 30.272(2)(f) provides, in part, that the "liability of a local public body" may not exceed "$666,700, for causes of action arising on or after July 1, 2014, and before July 1, 2015."[3] The key word here is "liability," which is not defined in the OTCA. *See* ORS 30.260.

Dictionary definitions of the term "liability" available in 2009 included "an amount that is owed whether payable in money, other property or services," and "an

---

[3] In its entirety, ORS 30.272(2) provides:

"The liability of a local public body, and the liability of the public body's officers, employees and agents acting within the scope of their employment or duties, to any single claimant for claims described in subsection (1) of this section may not exceed:

"(a) $500,000, for causes of action arising on or after July 1, 2009, and before July 1, 2010.

"(b) $533,300, for causes of action arising on or after July 1, 2010, and before July 1, 2011.

"(c) $566,700, for causes of action arising on or after July 1, 2011, and before July 1, 2012.

"(d) $600,000, for causes of action arising on or after July 1, 2012, and before July 1, 2013.

"(e) $633,300, for causes of action arising on or after July 1, 2013, and before July 1, 2014.

"(f) $666,700, for causes of action arising on or after July 1, 2014, and before July 1, 2015.

"(g) The adjusted limitation provided by subsection (4) of this section, for causes of action arising on or after July 1, 2015."

obligation or duty which is owed by one person to another
\*\*\* and for breach of which the law gives a remedy to the
latter (as damages, restitution, specific performance, injunc-
tion)." *Webster's Third New Int'l Dictionary* 1302 (unabridged
ed 2002). Liability was defined as "[t]he quality or state of
being legally obligated or accountable; legal responsibility to
another or to society, enforceable by civil remedy or criminal
punishment," and as "[a] financial or pecuniary obligation."
*Black's Law Dictionary* 997 (9th ed 2009). Liability was also
defined as "[t]hat for which one is liable, \*\*\* [especially]
the debts or pecuniary obligations of a person or company."
8 *The Oxford English Dictionary* 877-78 (2nd ed 1989).

Relying in part on definitions of "liability" as a "duty
to pay money" or "an amount that is owed," the Supreme
Court has construed the word broadly to mean "the duty or
legal responsibility to pay money on a tort claim." *Griffin v.
Tri-Met*, 318 Or 500, 508, 870 P2d 808 (1994). So construed,
the Supreme Court held that a $100,000 limitation on liabil-
ity in *former* ORS 30.270(1)(b) (1985),[4] included attorney fees.
*Griffin*, 318 Or at 508-09. As explained below, that statute
was amended and later repealed. Ultimately, we conclude
that the legislature did not intend for the word "liability" in
ORS 30.272 to be understood in the same way as construed
in *Griffin*.

    2.   *Context*

Turning from text to context, other provisions in
the OTCA suggest that the term "liability" in ORS 30.272

---

[4] *Former* ORS 30.270(1) (1985) was amended in 1987. Or Laws 1987, ch 19,
§ 13. The statute was repealed by Oregon Laws 2009, chapter 67, section 20. The
1985 version of the statute provided, in part:

"Liability of any public body or its officers, employes or agents acting within
the scope of their employment or duties on claims \*\*\* shall not exceed:

    "(a) $50,000 to any claimant for any number of claims for damage to or
destruction of property, including consequential damages, arising out of a
single accident or occurrence.

    "(b) $100,000 to any claimant for all other claims arising out of a single
accident or occurrence.

    "(c) $300,000 for any number of claims arising out of a single accident or
occurrence."

"Employes" is an alternative spelling for "employees." *Webster's Third New Int'l
Dictionary* 743 (unabridged ed 2002). "Employe" was once the common spelling of
the word. Byran A. Garner, *Garner's Dictionary of Legal Usage*, 314 (3d ed 2011).

refers to an obligation to pay damages, not attorney fees. Indeed, the OTCA contains only one reference to attorney fees in ORS 30.285. In that provision, which addresses indemnification, ORS 30.285 refers in its title to a public body's "obligation for judgment and attorney fees."[5] That provision identifies circumstances under which a public body's officers, employees, or agents "shall be indemnified against liability and reasonable costs of defending the claim." ORS 30.285(5).[6] If the "reasonable costs of defending the claim" include attorney fees, then "liability," as used in that section of the OTCA, does not. Otherwise, the legislature's reference to the "reasonable costs of defending the claim" would be mere surplusage. *See Crystal Communications, Inc. v. Dept. of Rev.*, 353 Or 300, 311, 297 P3d 1256 (2013) ("As a general rule, we construe a statute in a manner that gives effect, if possible, to all its provisions.").

By contrast, there are numerous references to damages in the OTCA. For example, ORS 30.265(3) refers to "the damages allowed under ORS 30.271, 30.272 or 30.273." ORS 30.265(4) addresses "the limitations on damages imposed under ORS 30.271, 30.272 or 30.273." ORS 30.269(1) explains that punitive damages may not be awarded, and ORS 30.269(4) provides that "[t]he limitations imposed under ORS 30.271(2) and 30.272(2) on single claimants include damages claimed for loss of services or loss of support arising out of the same tort." ORS 30.298(4)(b) addresses the liability of foster parents and indicates that the liability "is limited to economic damages."

As already noted, in *Griffin*, the Supreme Court held that the limitation on liability in *former* ORS 30.270(1)(b) (1985) included attorney fees. The Supreme Court pointed out that the provision, which stated that the "liability" of a public body could not exceed specified amounts, contained no qualification indicating that the limit applied only to damages. *Griffin*, 318 Or at 508. The Supreme Court stated

---

[5] Of course, captions and headings are provided by Legislative Counsel and they are not part of the statute as enacted by the legislature. ORS 174.540; *Church v. Grant County*, 187 Or App 518, 526 n 4, 69 P3d 759 (2003).

[6] ORS 30.285 was last amended in 2009. Or Laws 2009, ch 67, § 11. That set of amendments are the same ones that added ORS 30.272. Or Laws 2009, ch 67, § 4.

that, "[h]ad the legislature intended the limit on 'liability' to apply only to liability for tort damages, it could have said so." *Id.* at 508-09. The Supreme Court noted that "[o]ne obvious purpose of the OTCA was to allow public bodies to insure against potential liability for their torts." *Id.* at 509. "If amounts awarded against a public body as attorney fees and costs, rather than as damages, were excluded from the liability limits in the OTCA, the ability of a public body to determine with any certainty its potential liability for its torts would be diminished." *Id.* at 510. However, the Supreme Court recognized that the statute was amended in 1987, and the amended version expressly referred to damages. *Id.* at 509 n 7, 514 n 12.

The amended statute, *former* ORS 30.270(1)(b) (1987), referred to the liability of a public body as consisting of "special and general damages," and it provided that the total award of special damages could not exceed $100,000.[7] The Supreme Court determined that the plaintiff could not take advantage of those amendments because his claim accrued before they became effective. *Griffin*, 318 Or at 506. The court expressed no opinion on the effect of the 1987 amendments. *Id.* at 514 n 12.

Based on those amendments, in *Anglin v. Dept. of Corrections*, 160 Or App 463, 478, 982 P2d 547, *rev den*, 329 Or 357 (1999), we concluded that a different analysis applied to *former* ORS 30.270(1)(b) (1987), which expressly referred to the liability limitation as consisting of general and special damages.[8] As we explained in *Anglin*, 160 Or App at

---

[7] *Former* ORS 30.270(1)(b) (1987) provided, in part:

"(1) Liability of any public body or its officers, employees or agents acting within the scope of their employment or duties on claims * * * shall not exceed:

"* * * * *

"(b) $100,000 to any claimant as general and special damages for all other claims arising out of a single accident or occurrence unless those damages exceed $100,000, in which case the claimant may recover additional special damages, but in no event shall the total award of special damages exceed $100,000."

[8] Today, we use the terms "economic" and "noneconomic" damages rather than special and general damages. *See Clarke v. OHSU*, 343 Or 581, 608 n 17, 175 P3d 418 (2007) ("General damages, as noted above, now are described as noneconomic damages and encompass nonmonetary losses, including damages for pain

478, "[i]n order for defendants to prevail on their argument that attorney fees must be included within the liability limitation of that statute, they would need to demonstrate that either 'general damages,' or 'special damages,' or both, as those terms are used in that statute, include attorney fee awards." *Anglin* continued, "There is no basis to conclude from the text, the context, or even the legislative history, that the legislature intended the phrase 'general and special damages' to mean 'general and special damages and attorney fee awards.'" *Id.* at 479.

Despite *Anglin*'s holding, our query is not concluded. In 2009, the legislature repealed ORS 30.270 and replaced it with ORS 30.272. Or Laws 2009, ch 67, §§ 4, 20. The new provision, which addresses the liability limits of local public bodies, no longer refers to general and special damages. Instead, it simply provides that for causes of action accruing from July 2014 to July 2015, the "liability" of a local public body may not exceed $667,700. ORS 30.272(2)(f). Because the statute no longer refers to damages, defendants claim that attorney fees are once again included in the liability limits of the OTCA.

In support of their position, defendants cite *Burley v. Clackamas County*, 313 Or App 287, 496 P3d 652, *rev den*, 369 Or 69 (2021). In *Burley*, we affirmed the trial court's reduction of the plaintiff's requested attorney fees to conform to the limitation on liability in ORS 30.272(2)(f). *Id*. at 288. However, in that case, the plaintiff did not dispute the trial court's decision to include her attorney fees within the OTCA limits. *Id.* at 289. Instead, she argued that the statutory cap did not apply because her whistleblower-retaliation claim did not arise out of a "single accident or occurrence." *Id*. We rejected that argument and therefore affirmed the trial court's decision. *Id.* But, in *Burley*, we were not asked to address whether attorney fees should have been included within the liability limit of ORS 30.272(2)(f).[9]

---

and suffering, emotional distress, injury to reputation, and loss of companionship. * * * Special damages now are described as economic damages and refer to the verifiable out-of-pocket losses, including medical expenses, loss of income and future impairment of earning capacity, and costs to repair damaged property.").

[9] The dissent suggests that we "discount[] the importance of *Burley* to the issue before us." 325 Or App at 62 (Mooney, J., dissenting). But *Burley* is

The key question, then, is whether the repeal of *former* ORS 30.270, and its replacement with ORS 30.272, which no longer refers to damages, indicates that the legislature intended to return to *Griffin*'s broad interpretation of "liability." Ordinarily, we "assume that, when the legislature adopts wording from earlier versions of statutes, it intends to adopt any judicial construction that has been given that wording at the time of enactment." *Haynes v. Adair Homes, Inc.*, 231 Or App 144, 153, 217 P3d 1113 (2009), *rev den*, 348 Or 414 (2010). But that assumption applies when there is "no evidence that the legislature adopted the same wording from the predecessor statute, but nevertheless intended to imbue that wording with meaning different from what the courts had given it." *Id.*

Here, as discussed below, there is evidence regarding why the legislature removed the distinction between economic and noneconomic damages when it repealed *former* ORS 30.270 and replaced it with ORS 30.272. Based on that evidence, we cannot simply assume that the legislature intended to return to *Griffin*'s broad construction of "liability" as including attorney fees.

3.  *Legislative history*[10]

At the public hearings on Senate Bill (SB) 311 (2009), the bill that led to the enactment of ORS 30.272, former Representative Greg Macpherson explained that the new legislation was proposed to address the impact of

---

distinguishable because it does not address whether the limitation on liability in ORS 30.272(2)(f) includes attorney fees. Our opinion thus does not affect *Burley*'s precedential mooring.

[10] The dissent considers it unnecessary to analyze the statute's legislative history. 325 Or App at 63 (Mooney, J., dissenting). However, "a party is free to proffer legislative history to the court, and the court will consult it after examining text and context, even if the court does not perceive an ambiguity in the statute's text, where that legislative history appears useful to the court's analysis." *Gaines*, 346 Or at 172. Here, plaintiff proffered the statute's legislative history, and, because we are attempting to discern what the legislature intended when it used the word "liability" in ORS 30.272(2), and whether it intended to return to *Griffin*'s broad interpretation of the word or adhere to *Anglin*'s narrower interpretation, we consider ourselves obliged to examine why the legislature repealed *former* ORS 30.270 and replaced it with ORS 30.272(2), which no longer distinguishes between economic and noneconomic damages. Even if the same word "liability" is used, *Haynes* endorses an examination of why the legislature chose to use the word and what it intended. 231 Or App at 153.

*Clarke v. OHSU*, 343 Or 581, 175 P3d 418 (2007). Audio Recording, Senate Committee on Judiciary, SB 311, Jan 22, 2009, at 0:01:23 (comments of former Rep Greg Macpherson); Audio Recording, House Committee on Judiciary, SB 311 A, Mar 25, 2009, at 0:02:05 (comments of former Rep Greg Macpherson),https://olis.oregonlegislature.gov(accessedDec23, 2022).

     *Clarke* held that provisions of the OTCA, as applied to the facts of the case, violated the remedy clause in Article I, section 10, of the Oregon Constitution. *Clarke*, 343 Or at 610. The injured plaintiff brought an action against Oregon Health Sciences University (OHSU), and the individuals who treated him.[11] *Id.* at 586. He sought economic damages of about $12 million and noneconomic damages of $5 million. *Id.* The trial court entered judgment against OHSU in the amount of $200,000, the limit on liability at the time. *Id.* at 587. The Supreme Court held that that remedy was inadequate. *Id.* at 610. *Clarke* contains no discussion of whether the limitation on liability included or could include attorney fees.

     After *Clarke*, public entities worried that they had "moved into an uncapped environment" for tort liability, and they faced significantly increased costs for insurance. Testimony, Senate Committee on Judiciary, SB 311, Jan 22, 2009, Ex 2 (statement of Steve Stadum, OHSU). At the same time, there was a recognition that "the current $200,000 cap—which has been ruled unconstitutional by the Supreme Court—is too low and should be raised." *Id.* To address those problems, the leadership of the House and the Senate appointed a task force. Audio Recording, Senate Committee on Judiciary, SB 311, Jan 22, 2009, at 0:03:52, 0:17:34 (comments of former Rep Greg Macpherson), https://olis. oregonlegislature.gov (accessed Dec 23, 2022). It was comprised of members from the House and Senate, as well as representatives from OHSU, the Oregon Trial Lawyers Association (OTLA), and local governments. *Id*. The task

---

[11] The plaintiff was born in February 1998, and he was admitted to OHSU for heart surgery in May 1998. *Clarke*, 343 Or at 586. While in a surgical intensive care unit, he suffered prolonged oxygen deprivation causing permanent brain damage. *Id.* OHSU's name changed from Oregon Health Sciences University to Oregon Health & Science University in 2001.

force produced SB 311, which sought to balance the interests of providing an adequate remedy to injured parties while also ensuring that public entities could obtain affordable insurance. Audio Recording, Senate Committee on Judiciary, SB 311, Jan 22, 2009, at 0:22:50 (statement of Steve Stadum, OHSU), https://olis.oregonlegislature.gov (accessed Dec 23, 2022).

SB 311 proposed two tiers of new limits; one set of tort caps for state government and OHSU, and a lower set for local public bodies. Audio Recording, Senate Committee on Judiciary, SB 311 A, Mar 25, 2009, at 0:06:55 (comments of former Rep Greg Macpherson), https://olis.oregonlegislature. gov (accessed Dec 23, 2022); Testimony, Senate Committee on Judiciary, SB 311, Jan 22, 2009, Ex 1 (Recommendation of the Oregon Tort Claims Task Force), Ex 2 (statement of Steve Stadum), Ex 3 (letter from Bill Blair). Despite extensive negotiations, there was no discussion of including attorney fees within the new limits. Instead, a staff measure summary referred to the new caps as "damage limits." Staff Measure Summary, Senate Committee on Judiciary, SB 311 A, Feb 12, 2009.[12] And a fiscal analysis described the bill as increasing the "per claim and per occurrence damage limits." Fiscal Analysis of Proposed Legislation, Legislative Fiscal Office, SB 311 A, Feb 12, 2009. Those repeated references to the limitations on liability as "damage limits" are inconsistent with including attorney fees within the statutory caps.

The OTCA task force members and participants operated under a shared assumption that they were proposing increased limits for damages. For example, Bill Blair,

---

[12] As explained in the summary, the measure "[i]ncreases the per claim damage limits recoverable under the *** [OTCA] from the current $200,000 to $1.5 million for the state of Oregon and *** [OHSU], and to $500,000 for all other public entities. Increases the per occurrence damage limits under the *** [OTCA] from the current $500,000 to $3 million for the state of Oregon and OHSU, and to $1 million for all other public entities. Increases the state of Oregon and OHSU per claim limits by $100,000 per year until 2015. Increases the state of Oregon and OHSU per occurrence limits by $200,000 per year until 2015. Increases the per claim limits for all other government entities by $33,333 per year until 2015. Increases the per occurrence limits for all other government entities by $66,666 per year until 2015. Increases all property damage limits from the current $50,000 per claim to $100,000 per claim and $500,000 per occurrence." Staff Measure Summary, Senate Committee on Judiciary, SB 311 A, Feb 12, 2009. That detailed summary of the new "damage limits," and their gradual increase over time, contains no reference to attorney fees.

a task force member representing local governments,[13] described the limits on liability as consisting of property damage, economic damages, and noneconomic damages, but he did not include attorney fees within the limits. Ex C, Joint Interim OTCA Task Force Hearing, Sept 25, 2008. Mark Rauch, the general counsel for the City County Insurance Services Trust (CIS),[14] described the OTCA's liability limits as a "cap on damages" that had been "crucial to our ability to successfully cover those exposures as a 'pool' and obtain affordable reinsurance above the pool's self-insured retention level ($500,000 per occurrence)." Ex H, Joint Interim OTCA Task Force Hearing, June 19, 2008.

Similarly, representatives of OHSU and the OTLA approached the caps as "damage limitations." Ex A, Joint Interim OTCA Task Force Hearing, Sept 25, 2008. Their memorandum of understanding referred to their new proposed liability limits as "tort claims damage cap[s]." *Id.* They proposed "no separate sub-limit for non-economic damages. Previously, non-economic damages were capped as a sub-limit of $100,000 within the $200,000 tort cap limit." *Id.* Their initial proposal, as reflected in a memorandum of understanding, was to raise the "per claim" limit to $1.5 million for all public bodies, and to raise the "per occurrence" limit to $3 million. *Id.*

Local governments balked at that proposal and instead proposed a "two-tiered cap structure," with lower limits for local governments. Ex. C, Joint Interim Task Force Hearing, Sept 25, 2008. Initially, local governments were reluctant to jettison the sublimit on noneconomic damages. Ex. A, Joint Interim OTCA Task Force, Oct 30, 2008. As explained by Blair, "[i]t is critically important to the stability and success of local government risk management that 'blue sky' damage claims be effectively and separately capped. While a very good public policy case can be made for a cap high enough to assure that the overwhelming majority of injured claimants will be compensated for the economic

---

[13]  Bill Blair was a Senior Assistant County Counsel for Washington County. Testimony, Senate Committee on Judiciary, SB 311, Jan 22, 2009, Ex 3.

[14]  CIS was formed in 1981 "as a trust to 'pool' the liability exposures of cities, counties, and related public entities in Oregon." Ex H, Joint Interim OTCA Task Force Hearing, June 19, 2008.

cost that comes with their injuries, the 'noneconomic' element of pain and suffering, is not capable of mathematical computation and subjects the public body defendant to emotionally loaded verdicts." Ex. C, Joint Interim OTCA Task Force, Sept 25, 2008.

Ultimately, representatives of local governments agreed that the new legislation did not have to distinguish between economic and noneconomic damages so long as it included a two-tiered structure that involved higher caps for the state and OHSU and lower caps for other local government entities. Ex A, Joint Interim OTCA Task Force Hearing, Oct 30, 2008; Ex A, Joint Interim OTCA Task Force Hearing, Nov 17, 2008. Blair explained that, although OHSU could adjust to increased insurance costs by increasing fees for services, most local government entities did not have that flexibility. Ex D, Joint Interim OTCA Task Force Hearing, Oct 30, 2008. Blair estimated that increasing local government limits to $1 million would result in a 14 percent increase in insurance costs.[15] *Id.* Blair described the new proposed limits as "[c]ombining and raising economic and non-economic damage caps." *Id.* Based on descriptions of that kind, we cannot reasonably infer an intention to return to *Griffin*'s broad construction of "liability" as including both damages and attorney fees.

At the public hearings on SB 311, there was further discussion about the proposal to eliminate the distinction between economic and noneconomic damages. MacPherson explained that the "key driver" in eliminating the distinction was the increase in medical costs and a recognition that those costs are economic damages that can "dwarf any other category of damage." Audio Recording, Senate Committee on Judiciary, SB 311, Jan 22, 2009, at 0:16:10 (comments of former Rep Greg MacPherson), https://olis. oregonlegislature.gov (accessed Dec 23, 2022). According to

---

[15] Based on information provided by CIS, Blair noted that over 20,000 "general liability claims have been filed against CIS members since 1981. Only 106 claims (0.5%) have exceeded $100,000 in cost. Those 106 claims account for 32% of the $74.8 million paid out for general liability claims by the Trust over the 26 years of its existence." Ex D, Joint Interim OTCA Task Force Hearing, Oct 30, 2008. Nevertheless, Blair also noted that "[t]he impact of *Clarke* was felt in a 25% increase in reinsurance premium[s] billed to CIS in 2008-09." *Id.*

MacPherson, the distinction was eliminated to simplify litigation and "up to the $1.5 million and $3 million new caps, a claimant could present their case with either category of damage." *Id.* at 0:17:15. MacPherson understood that claimants could pursue damages "up to" the new limits, so it is reasonable to infer that MacPherson did not view the new limitations on liability as applying to attorney fees.

Similarly, for Richard Lane of the OTLA, who was a member of the task force, eliminating the reference to economic and noneconomic damages meant providing a more adequate remedy for injured persons. Audio Recording, House Committee on Judiciary, SB 311 A, Mar 25, 2009, at 0:24:10 (comments of Richard Lane), https://olis.oregonlegislature. gov (accessed Dec 23, 2022). As explained by Lane in a written submission to the task force, "we also feel it is absolutely imperative that we increase the cap as a whole, not breaking into economic and non-economic losses. When someone is injured by another in a negligent way, we should not be deciding whose life is worth more—a CEO of a downtown Portland business, a child, a stay at home mom, a steelworker, a retired senior citizen. When we limit non economic damages that is exactly what we are doing. We are telling the child, the stay at home mom, the senior that because they have no 'on paper' wages, they are not worth as much." Ex A, Joint Interim Oregon Tort Claims Act Task Force, Sept 25, 2008. For the OTLA, then, a main concern was to permit injured plaintiffs to recover more noneconomic damages. That reasoning cuts against the assumption that the new limitations on liability were intended to consist of both damages and attorney fees.

At a work session on SB 311, Senator Alan Bates described the new proposed limits as "universal caps" that did not differentiate between economic and noneconomic damages. Audio Recording, Senate Committee on Judiciary, SB 311, Feb 11, 2009, at 0:19:01 (comments of Sen Alan Bates), https://olis.oregonlegislature.gov (accessed Dec 28, 2022). And on the House floor, Representative Jeff Barker referred to SB 311 as increasing "the per claim damage limits recoverable" under the OTCA. Audio Recording, House Floor Debate, SB 311, Apr 6, 2009, at 0:26:01 (comments of

Rep Jeff Barker), https://olis.oregonlegislature.gov (accessed Dec 23, 2022). He also referred to increases in the "per occurrence damage limits." *Id.* at 0:26:28. Barker noted that the bill provided for direct appeal to the Supreme Court for challenges to the constitutionality of the "damage limits." *Id.* at 0:28:17.

Accordingly, what the legislative history reveals about the repeal of *former* ORS 30.270, and its replacement with ORS 30.272, is that some parties were interested in eliminating the sublimit on economic damages to more adequately compensate injured plaintiffs who required expensive, long-term medical care, while others were interested in eliminating the sublimit on noneconomic damages to more adequately compensate injured parties with less earning potential. But both justifications undermine the assumption that the legislature intended to return to *Griffin*'s interpretation of "liability." *Griffin*'s interpretation would mean less compensation for injured plaintiffs at a time when stakeholders from both sides recognized the need for new, higher limits.

At the same time, there was also a concern about the increased costs of insurance, and, as a result, there were extensive negotiations about what the new, higher limitations on liability should be, about how they should differ for different kinds of public entities, and about how they could increase over time. Statements made during those discussions indicate that many participants understood the new limits as caps on damages. Thus, although the legislature used the same word "liability" that was construed in *Griffin*, and although it eliminated the reference to economic and noneconomic damages, we conclude that the legislature "intended to imbue" the word "liability" with a meaning that differed from the Supreme Court's earlier construction. *Haynes*, 231 Or App at 153.[16]

---

[16] In *Haynes*, 231 Or App at 153, the court considered language that "was carried over into the new statute unchanged." When that occurs, it makes sense to assume that the legislature intended to adopt prior judicial constructions of the language. But here, the legislature did not simply carry over unchanged language. Although the same word "liability" is used in *former* ORS 30.270 (1985), in *former* ORS 30.270 (1987), and in ORS 30.272, it is a much greater logical leap to assume that by repealing *former* ORS 30.270 (1987), which referred to

   In *Horton v. OHSU*, 359 Or 168, 376 P3d 998 (2016), the Supreme Court analyzed the legislative history of the 2009 amendments to the OTCA in a manner that supports our construction. According to the Supreme Court:

> "The legislature recognized that the increased *damages* available under the revised Tort Claims Act would not provide a complete recovery to everyone injured as a result of the state's tortious acts. However, those increased limits provide a complete recovery in many cases, greatly expand the state's liability in the most egregious cases, and advance the purposes underlying the doctrine of sovereign immunity while ensuring that a solvent defendant is available to pay a plaintiff's *damages up to the amount of the Tort Claims Act limit*. Given the legislature's efforts to accommodate the state's constitutionally recognized interest in sovereign immunity and a plaintiff's constitutional right to a remedy, we cannot say that the $3,000,000 tort claims *limit on damages* against state employees is insubstantial in light of the overall statutory scheme, which extends an assurance of benefits to some while limiting benefits to others."

*Horton*, 359 Or at 223-24 (emphasis added). *Horton* indicates that a plaintiff can pursue damages up to the limits on liability, and there is no indication that the limits were also intended to encompass attorney fees.[17] *See Busch v. McInnis Waste Systems, Inc.* 366 Or 628, 638, 468 P3d 419 (2020) ("The Oregon Tort Claims Act waives the state's sovereign immunity up to the damages limits."). It follows that the legislature had a cognizable intent when it changed the language of the statute, and, based on the text, context, and legislative history, we conclude that the legislature did not

---

"liability" as consisting of general and special damages, and by replacing it with ORS 30.272, which eliminated the reference to those categories of damages, the legislature intended to return to *Griffin*'s construction of "liability" as used in *former* ORS 30.270 (1985). Given the repeated references in the legislative history of the 2009 amendments to the new statutory caps as "damage limits," we cannot assume that the legislature intended to return to *Griffin*'s broad construction of "liability" as including attorney fees.

[17] As the dissent correctly points out, in *Horton*, the Supreme Court did not address the issue of whether attorney fees are included in the liability limit of ORS 30.272(2)(f). 325 Or App at 62-63 (Mooney, J., dissenting). But if, as the Supreme Court states, a plaintiff can pursue "damages up to the amount of the Tort Claims Act limit," *Horton*, 359 Or at 224, then that does not suggest including attorney fees within the limit.

intend for the limitation on liability in ORS 30.272(2)(f) to include attorney fees.[18]

4. *Additional considerations regarding the OTCA*

Defendants argue that if the liability limits in the OTCA do not include attorney fees, then "there are no fixed monetary limits of the liability of a city, because the limits will change with every award of attorney fees." We recognize that the liability limits in the OTCA help public entities control costs. *See Burley*, 313 Or App at 292 ("[T]he limitation on liability under the OTCA was enacted to protect the financial stability of public bodies and to enable them to obtain insurance."). We also recognize that including attorney fees with the limitations on liability creates more uncertainty regarding public entities' potential exposure. *Griffin*, 318 Or at 510. But what spurred the 2009 amendments was a concern to provide an adequate, but not unlimited, remedy for injured plaintiffs, and we cannot ignore the repeated references to the proposed statutory caps as "damage limits." Furthermore, not every party who prevails on a tort claim against a public entity is entitled to attorney fees. In the instant case, plaintiff is entitled to reasonable attorney fees because he prevailed on fee-bearing claims of discrimination and aiding and abetting discrimination. *See Bush I*, 301 Or App at 683-84.

Finally, it is worth noting the inherent contradiction between defendants' position and the underlying settlement. The city agreed to pay plaintiff $667,701, "plus reasonable attorney fees, costs and disbursements as determined pursuant to ORCP 68." That settlement offer was for exactly one dollar over the amount which defendants claim shields them from further exposure, and the offer appears to contemplate a motion for attorney fees that would be considered separately from the settlement. Now defendants argue that plaintiff is not entitled to any attorney fees because the award exceeded a limitation on liability in the OTCA. Plaintiff argues that settling for one dollar over the cap waives the argument that the cap applies in this

---

[18] Because our examination of text, context, and legislative history resolves the question, we do not resort to maxims of statutory construction. *Gaines*, 346 Or at 172.

case, regardless of what we might hold otherwise. Although our holding that the cap does not extend to attorney fees obviates the need to address plaintiff's waiver argument, we agree with plaintiff that defendants have taken what appears to be an inherently inconsistent position. In the instant case, the trial court's award of damages to plaintiff in an amount exceeding the limitation on liability in ORS 30.272(2)(f) did not preclude him from seeking reasonable attorney fees from the city and LGPI.

B.   *The Arguments Regarding When Attorney Fees Were Incurred and the Failure to Apportion Attorney Fees Between the City and LGPI*

Next, we consider various assignments of error that relate to the trial court's decision to award attorney fees against the city and LGPI jointly and severally from September 3, 2013 to September 10, 2015.

In its third and fourth assignments of error, the city claims that the trial court erred in awarding attorney fees for work performed before plaintiff filed his lawsuit on July 16, 2014, and after judgment was entered against the city on December 2, 2014.[19] In its fifth assignment, the city claims that the trial court erred in awarding attorney fees against the city that related solely to LGPI. In its second assignment of error, LGPI argues that the trial court erred in awarding fees against LGPI that were not incurred in the prosecution of plaintiff's aiding and abetting claim. And in its third assignment, LGPI argues that plaintiff should not have been awarded attorney fees after judgment was entered against LGPI on August 13, 2015.

"Whether a party is entitled to attorney fees presents a question of law, but whether fees are reasonable is a factual determination that we review for abuse of discretion." *Makarios-Oregon, LLC v. Ross Dress-for-Less, Inc.*, 293 Or App 732, 739, 430 P3d 142, *adh'd to as modified on*

---

[19] The city also suggests that attorney fees should not have been awarded against it after October 8, 2014, when it made its offer of judgment, but the record shows that the parties incurred fees after that date relating to negotiating the form of the judgment. Indeed, a stipulated general judgment was entered on November 24, 2014, and the amended stipulated limited judgment was not entered until December 2, 2014.

*recons*, 295 Or App 449, 430 P3d 1125 (2018). "[W]hen a statute authorizes a trial court to award attorney fees to a plaintiff who prevailed in litigation, the court is not limited to awarding only those fees incurred after the plaintiff filed her complaint." *Fadel v. El-Tobgy*, 245 Or App 696, 709, 264 P3d 150 (2011), *rev den*, 351 Or 675 (2012).

In the instant case, the trial court awarded attorney fees for work done before the case was filed. The trial court made detailed findings regarding the extensive work performed between September 3, 2013, when the city placed plaintiff on administrative leave, and July 16, 2014, when plaintiff filed his lawsuit. Only three months later, the city made an offer of judgment, which supports plaintiff's claim that the fees incurred before the lawsuit helped to achieve the success that plaintiff enjoyed. *See Fadel*, 245 Or App at 710 (plaintiff was entitled to an award of prelitigation fees); *see also Bearden v. N.W.E., Inc.*, 298 Or App 698, 708-09, 448 P3d 646 (2019) (plaintiff was entitled to an award of attorney fees incurred during an administrative proceeding that preceded the litigation). We find no error in the trial court's award of prelitigation attorney fees.

However, a different analysis applies to the trial court's award of post-judgment attorney fees and its decision not to apportion fees between the parties. Judgment was entered against the city on December 2, 2014. Yet, implicit in the trial court's third supplemental judgment is its determination that both the city and LGPI remained jointly and severally responsible for all attorney fees until September 10, 2015. We recognize that a party may be entitled to reasonable post-judgment fees if they are related to the prosecution of the action. *See* ORCP 68 A(1) (Attorney fees are "the reasonable value of legal services related to the prosecution or defense of an action."); *see also TriMet v. Aizawa*, 277 Or App 504, 510-11, 371 P3d 1250 (2016), *aff'd*, 362 Or 1, 403 P3d 753 (2017) (collecting cases discussing recovery of fees for work done after entry of judgment). But here, the trial court did not explain why both the city and LGPI should be jointly and severally responsible for plaintiff's attorney fees incurred after December 2, 2014, when the sole remaining defendant in the case was LGPI.

When there are common issues, apportionment of attorney fees among different claims or parties may not be required. *Village at North Pointe Condo. Assn. v. Bloedel Constr.*, 278 Or App 354, 369-71, 374 P3d 978, *adh'd to on recons*, 281 Or App 322, 383 P3d 409 (2016). Here, plaintiff sued the city for discrimination against a uniformed service member, ORS 659A.082, and he sued LGPI for aiding and abetting the city's discrimination, ORS 659A.030(1)(g). The trial court indicated that, to prevail on his aiding and abetting claim against LGPI, plaintiff was required to prove the city's underlying discrimination. Based on that determination, we cannot say that there was an abuse of discretion in the trial court's decision to award attorney fees against the city and LGPI jointly and severally up to December 2, 2014. *See Village at North Pointe Condo. Assn.*, 278 Or App at 369 (apportionment decisions reviewed for abuse of discretion).

But, after December 2, 2014, LGPI was the sole remaining defendant. Yet the trial court's third supplemental judgment holds the city responsible for attorney fees that plaintiff continued to incur until September 10, 2015. The trial court provided no explanation for why both parties were jointly and severally responsible for those fees. For that reason, we reverse the third supplemental judgment and remand for the trial court to apportion fees between the city and LGPI from December 3, 2014 to September 10, 2015. In addition, plaintiff must explain the reasonableness of the fees he incurred during that time. *See* ORS 659A.885(1) ("the court may allow the prevailing party costs and reasonable attorney fees"); ORCP 68 A(1) (defining attorney fees as "the reasonable value of legal services"); ORS 20.075 (the factors courts shall consider include the objective reasonableness of the parties during the proceedings and in pursuing settlement of the dispute). The trial court's findings "need not be lengthy or complex, but they must describe the relevant facts and legal criteria underlying the court's decision in terms that are sufficiently clear to permit meaningful appellate review." *Makarios-Oregon*, 293 Or App at 741.

C.   *The Remaining Arguments*

In its first assignment of error, the city argues that the trial court's finding on remand of a global settlement

contract was contrary to the law of the case. But there is no indication that the city made that argument below. We conclude that the argument was not preserved, and we decline to address it. *See Willamette Oaks, LLC v. City of Eugene*, 295 Or App 757, 767-68, 437 P3d 314, *rev den*, 365 Or 192 (2019) (concluding that the appellant's assignment of error was unpreserved because the argument based on the law of the case doctrine was not made in the lower tribunal).

In the city's sixth assignment of error, and in LGPI's fourth assignment, they raise challenges to the amount of attorney fees awarded. Whether fees are reasonable is a factual determination that we review for abuse of discretion. *Makarios-Oregon*, 293 Or App at 739. Here, the trial court observed that the case was complicated. For example, the trial court found that there was "a mountain of information at issue. * * * LGPI's investigation of [p]laintiff covered a six-year period, and took more than 300 days to complete. The LGPI investigator interviewed plaintiff for four days. The transcript of that interview is 541 pages long. There were tens of thousands of pages of potentially relevant information." Findings of that nature support the trial court's determination that most of the attorney fees plaintiff incurred were reasonable.

In challenging those findings, the city objects to work performed by a paralegal, and the city complains about block-billing and vague time entries. However, the city provides no specific examples. Based on its failure to do so, we cannot conclude that the trial court abused its discretion. *See Quick Collect, Inc. v. Higgins*, 258 Or App 234, 243, 308 P3d 1089 (2013) (finding no abuse of discretion in the amount of the fee award because the appellant's objections lacked specificity).

Regarding work that it claims was duplicative, the city provides examples, which relate to tasks performed by an attorney with the assistance of a paralegal. But it is not unusual for a paralegal to assist an attorney, especially in a complicated case. Having reviewed the examples of alleged duplicative billing, we find no abuse of discretion in the trial court's award. Finally, LGPI provides examples of time entries from March to September 2015 that it claims were

vague and excessive. Because we reverse and remand for the trial court to apportion fees between the city and LGPI after December 2, 2014, and to assess the reasonableness of the fees sought after that date, the trial court will be in a better position to address that argument on remand.

We reiterate that we find no error or abuse of discretion in the trial court's decision to award fees against the city and LGPI, jointly and severally, from September 3, 2013 to December 2, 2014. For that period of time, the trial court may simply enter an award of attorney fees against the city and LGPI, jointly and severally, that is consistent with this opinion and with the trial court's prior findings. However, from December 3, 2014 to September 10, 2015, the trial court must apportion fees between the city and LGPI and explain how it assessed whether the fees sought were reasonable. We reverse and remand the third supplemental judgment for the trial court to make the appropriate findings.

Reversed and remanded.

**MOONEY, J.,** dissenting.

The Oregon Tort Claims Act (OTCA) "waives the state's sovereign immunity," but only to the extent waived by the "express terms" of the OTCA. *Sherman v. Dept. of Human Services*, 368 Or 403, 418, 492 P3d 31 (2021). The OTCA carefully balances the purposes underlying the state's constitutionally recognized interest in sovereign immunity embodied in Article IV, section 24, of the Oregon Constitution, with an injured person's constitutionally recognized right to a remedy by due course of law embodied in Article I, section 10, of the Oregon Constitution. As the majority acknowledges, the legislature amended the specific OTCA language at issue in this case at least once in response to appellate court opinions. That suggests that our tripartite system of government, with its built-in checks and balances, is working—not only to prevent the misuse of power, but also to encourage the branches of government to work together for the good of the people. The legislature, in its policy and law-making role, struck a balance between the competing constitutional interests of immunity and remedy. In striking and re-striking that balance, the legislature has shown that it is aware of Oregon's appellate court opinions and that

it will modify state law in response to those opinions when it deems it necessary to do so. The majority assumes a legislative role today by modifying ORS 30.272(2)(f) to waive the state's immunity to liability for attorney fees. In doing so, the majority crosses a line that I am not willing to go over.

I would decide this case by applying *Griffin v. Tri-Met*, 318 Or 500, 870 P2d 808 (1994), to the OTCA language in question because the current language is, in all material respects, the same as the language that was before the Supreme Court in *Griffin*. The statutory language at issue in *Griffin* was the pre-1989 version of ORS 30.270(1), that is, as relevant:

> "Liability of any public body *** shall not exceed:
>
> "* * * * *
>
> "(b)   $100,000 to any claimant for all other claims ***."

The court in *Griffin* held that the $100,000 liability limit of the pre-1989 OTCA provision applied to attorney fees and costs awarded against a public body. 318 Or at 503. The *Griffin* court acknowledged that ORS 30.270(1)(b) had since been amended, but it applied the version that was in effect at the time the cause of action arose. *Id.* at 504. It mentioned in a footnote that the then-current (1989) version of ORS 30.270(1)(b), which did not apply to the case before it, was different insofar as it added the words "general and special damages," as follows:

> "Liability of any public body *** shall not exceed:
>
> "* * * * *
>
> "(b)   $100,000 to any claimant as general and special damages for all other claim ***."

*Id.* at 509 n 7 (quoting ORS 30.270(1)(b) (1989); emphasis omitted; formatting altered). A few years later, we relied on *Griffin*, and in particular footnote 7 in *Griffin*, to conclude that "[t]he OTCA damages limitation of ORS 30.270 (1)(b) explicitly applies to 'general and special damages,'" and we found no basis to conclude that the legislature intended that phrase to include attorney fees. *Anglin v. Dept. of Corrections*, 160 Or App 463, 479, 982 P2d 547, *rev den*, 329 Or 357 (1999).

In 2009, the legislature repealed ORS 30.270 and replaced it with ORS 30.272. Or Laws 2009, ch 67, §§ 1, 4. The parallel provision then provided:

"(2)   [L]iability of a local public body *** may not exceed:

"* * * * *

"(f)   $666,700, for causes of action arising on or after [certain dates]."

The language that caused this court to distinguish *Anglin* from *Griffin* was no longer part of the statute. The legislature has not modified that language since 2009. Because the language is the same in all essential respects now as it was in the prior version of the statute applied in *Griffin*, we should follow the Supreme Court's holding in *Griffin*. I do not share the majority's reluctance to assume that "when the legislature adopts wording from earlier versions of statutes, it intends to adopt any judicial construction that has been given that wording at the time of enactment." *Haynes v. Adair Homes, Inc.*, 231 Or App 144, 153, 217 P3d 1113 (2009), *rev den*, 348 Or 414 (2010). One cannot read *Griffin* and *Anglin* without clearly understanding that the words "general and special damages" changed the meaning of *former* ORS 30.270(1)(b), later reenacted as ORS 30.272(2)(f). Without those words, the OTCA's limit on liability includes attorney fees. With those words, it does not.

We recently affirmed a trial court's reduction of attorney fees to comply with the liability limit of ORS 30.272(2)(f) in *Burley v. Clackamas County*, 313 Or App 287, 496 P3d 652, *rev den*, 369 Or 69 (2021). The majority discounts the importance of *Burley* to the issue before us because the parties there did not question the propriety of including attorney fees within the OTCA limit of ORS 30.272(2)(f). I agree that the issue was not raised in *Burley*. At the same time, when we construe a statute, we have a responsibility to do so correctly "whether or not asserted by the parties." *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997). I would add that it is inconsistent for the majority to discount *Burley* but to then rely on *Horton v. OHSU*, 359 Or 168, 376 P3d 998 (2016), to support its position that attorney

fees are not included in the liability limit of ORS 30.272(2)(f) when that issue was also not raised or addressed in *Horton*.

It was not necessary for the majority to engage in its legislative history exercise. The Supreme Court addressed the exact same issue as is before us now in *Griffin* and stated that the "statute does not refer to 'damages' at all. Had the legislature intended the limit on 'liability' to apply only to liability for tort damages, it could have said so." *Griffin*, 318 Or at 508-09. In fact, the legislature did so when it amended the statute to add "general and special damages" in 1989. When it again amended the statute to remove that same phrase, we must assume it did so fully cognizant of *Griffin* and *Anglin*. *See Haynes*, 231 Or App at 153-54 (explaining that "we ordinarily assume that, when the legislature adopts wording from earlier versions of statutes, it intends to adopt any judicial construction that has been given that wording at the time of enactment"). The majority improperly attributes significance to the absence of any mention of "including attorney fees within the new limits" in the legislative history that it culled. 325 Or App at 49. But the "absence of legislative history on the subject of attorney fee awards tells us nothing." *Anglin*, 160 Or App at 479. But if there is anything to be gleaned from the legislative history as to the legislative intention in amending the statute in 2009, it is the concern that cities not be exposed to unlimited potential liability. Testimony, Senate Committee on Judiciary, SB 311, Jan 22, 2009, Ex 2 (statement of Steve Stadum, OHSU) (expressing concern that, after *Clarke v. OHSU*, 343 Or 581, 175 P3d 418 (2007), public entities worried that they had "moved into an uncapped environment" for tort liability, and they faced significantly increased costs for insurance). The majority opinion runs contrary to that intention.

I dissent from the majority opinion because it is, for the reasons I have stated, inconsistent with current statutory language and existing judicial construction of that language. I would hold that the limitation on "liability" contained within ORS 30.272(2)(f) includes the attorney fees awarded to plaintiff in this case.